[Civil No. 2765.   Filed January 28, 1929.]

[274 Pac. 161.]

PAULA M. JOHNSON, HENRY VICTOR JOHN-
SON   and   WOODROW   VICTOR   JOHNSON,
Petitioners, v. THE INDUSTRIAL COMMIS-
SION OF ARIZONA, Respondent.

See Workmen's Compensation Acts, **C. J.**, sec. 112, p. 115, n. 25,
sec. 114, p. 115, n. 37, sec. 127, p. 123, n. 45.

Mr. Thomas W. Nealon and Mr. W. F. Dains, for
Petitioners.

Mr. John J. Taheny, for Respondent.

LOCKWOOD, C. J.—Petitioners in this case are claiming compensation for the death of Clark Victor Johnson, who was found dead on the seventeenth day of February, 1928, at the bottom of a shaft of a mine of the Magma Copper Company, by which company he was then employed. The matter was submitted to the Industrial Commission upon a full hearing of all the facts, and the Commission found that the evidence was insufficient to show his death was caused by an accident arising out of and in the due course of his employment. A rehearing was granted, petitioners being represented by counsel, and after consideration the Commission affirmed its former ruling, and petitioners have applied for a writ of *certiorari* to this court in accordance with statute.

It is the contention of petitioners that decedent, while in the due course of his employment, accidently fell into a mining shaft on the premises of the Magma Copper Company and by such fall was killed. If this be so, they are entitled to recover. It is the position of the Industrial Commission that the evidence shows the deceased abandoned his employment and endeavored to commit suicide, and that as a result of such attempt he fell down the shaft, which fall was the immediate cause of his death. If such be the truth, the finding of the Commission is proper.

Under the Compensation Act (Laws 1925, chap. 83) petitioners must show affirmatively by a reasonable preponderance of the evidence that the death arose both out of and in the due course of the employment. *In re McNicol,* 215 Mass. 497, L. R. A. 1916A 306, 102 N. E. 697; *Ocean Accident & Guarantee Co.* v. *Industrial Commission,* 32 Ariz. 265, 257 Pac. 641.

If the evidence is such that a reasonable man could reach a conclusion therefrom either way on such

issues, the decision of the Commission on the facts has the same force and effect as the finding of a jury, and will not be disturbed by us. *Federal Mutual Liability Ins. Co.* v. *Industrial Commission,* 31 Ariz. 224, 252 Pac. 512.

With these two principles of law to guide us, let us examine the evidence.

Deceased was a pumpman, employed for several months at a station on the 2,000-foot level of the Magma Copper Company's mine. The station was about 150 feet from the shaft and visible from the hoisting cage, and at 4 P. M. the day of his death he was observed at his work; but no one thereafter saw him alive. Shortly after 6 P. M. his body was found at the bottom of the shaft, some 600 feet below his place of work. The shaft was a three-compartment one, cages running in two compartments, and the third being a manway with ladders through which the miners could ascend and descend on foot. The compartments were separated by what is known as "dividers," these being heavy 10 by 10 timbers, spaced about 4 feet apart, and it would be very improbable a man could fall down one compartment and bounce across into the other without some marks showing on the dividers, as they were covered with dust. No such marks were found thereon.

Johnson was found at the bottom of what is known as the "number one hoisting compartment." In the No. 2 compartment, alongside, the blade of a straight razor with fresh blood stains thereon was found, while two sides of a razor handle were lying on one of the timbers on one side of the shaft. A heavy wooden bar was used as a guard-rail across the No. 2 compartment on the 2,000-foot level. This bar was unquestionably in place at the time Johnson went to work, and in order to remove it, it was necessary to unscrew a large bolt. The bar was found lying three or four feet from the shaft on the 2,100-foot level

shortly after Johnson was last seen alive. Some forty feet below the 2,000-foot level where the pump station was is a place called the "skip loading station." At this place footprints were visible in the dust, and spots of blood were seen. From this loading station a chute ran down to the shaft. On the apron of the chute more bloodstains were found and below this loading station numerous blood stains appeared on the dividers and guides between the compartments, some of these last-named marks being unquestionably made by the bloody hands of someone who was climbing in the shaft, either up or down. The prints were the plainest at the top and fainter at the bottom. The bottoms of the hoisting cages were covered with oil and dust, and an examination of them showed no indication that they had struck anything while being raised and lowered in the shaft that day. A bloody shirt, which was afterwards identified as Johnson's, was found in the manway compartment a little above the 2,100-foot level, most of the blood being on the front of the shirt. There was no evidence that any other person was injured in the mine during that day in such manner that he could have left the blood stains found. There was a cut with sharp edges on Johnson's throat, extending practically from ear to ear, which had not severed the jugular vein, but was of such a nature that if it had not been attended to he would eventually have bled to death. It also appeared that the razor and razor handles found in the shaft were at least similar in appearance to a razor which Johnson had kept at the pump station.

On an examination of all this testimony, it will be seen readily that a reasonable man might well assume therefrom that Johnson had endeavored to commit suicide by cutting his throat, and that his death resulted from his voluntary acts during and after such attempt. On the other hand, it is, of course, possible,

that he might have been murdered and his body thrown down the shaft, or that he fell accidentally. The Industrial Commission has determined that this evidence did not convince them his death was caused by an accidental fall or murder arising in and out of the course of his duty.

Counsel for petitioners have cited a number of cases to us where either a Commission or the trial court, on circumstances which might lead either to the conclusion of accident or suicide, has found that the death was accidental, and such finding was afterwards supported by the appellate court. All these cases are in strict conformity with the rule laid down by us in *Federal Mutual Liability Ins. Co.* v. *Industrial Commission, supra,* to the effect that the decision of the Commission based on conflicting facts will not be disturbed, for in all the cases cited the trial tribunal found the death was accidental.

Such, however, is not the situation in the case at bar. Herein the Commission has determined the death was *not* an accidental one within the statute, and we are asked to reverse its finding. It is urged that the law does not presume suicide. This is undoubtedly true, and unless there were some evidence to support such a theory it could not be manufactured by the Commission out of thin air. When, however, as in this case, there is positive, even though circumstantial evidence which would justify a belief that defendant committed suicide, the presumption of accidental death is overcome, and the finding of the Commission that the death did not arise out of and in the due course of employment is sustained by the evidence.

Award affirmed.

McALISTER and ROSS, JJ., concur.