[Civil No. 3042. Filed June 8, 1931.]

[299 Pac. 1026.]

HARTFORD ACCIDENT & INDEMNITY COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and R. B. SIMS, BURT H. CLINGAN and WILLIAM E. HUNTER, Members of the Said THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Conner & Jones, for Petitioner.

Mr. Terrence A. Carson (Mr. Charles Blenman, of Counsel), for Respondents.

ROSS, J.—This case grows out of a claim by Carrie M. Kronnick against the Santa Rita Hotel Company, of Tucson, employer, and the Hartford Accident & Indemnity Company, insurance carrier, for compensation for the death of her husband, Frank S. Kronnick, caused, as claimed, by an accident arising out of and in the course of his employment. The insurance carrier, being dissatisfied with the award made by the Industrial Commission, brings the case here, contending the commission's finding to the effect that Kronnick's death was proximately caused by the accident is not supported by the evidence, is contrary to the evidence, is founded on mere speculation, surmise, and possibilities. This is the sole question.

That Kronnick suffered an accident and severe injuries is not disputed, nor is it questioned that, if the evidence showed he died by reason of such injuries, or that they contributed thereto, the claimant is entitled to death benefits.

By a post-mortem it was discovered that Kronnick had a diseased heart, and it is contended he died solely by reason of such diseased condition, and that the injuries did not cause or contribute to his death.

On June 18, 1930, while Kronnick was engaged in making some alterations in his employer's hotel building, he fell from a scaffolding to the cement flooring, and sustained a severe comminuted fracture of his right heel bone and a simple fracture of the right crest of the pelvis. At the time he was sixty-two years of age. He was a very healthy man; had never been subject to any ailment, disease, illness, weakness, infirmity or disability, except about one year before he had gotten something in his eye and called a doctor to treat it. Beyond that, says his wife, during the thirty-seven years of their married life, he had never to her knowledge been attended by a physician until this accident.

Dr. G. W. Purcell attended Kronnick from the time of his injury until he died on July 3, 1930, and it is largely upon his testimony the insurance carrier relies to establish its claim that death was not the result of the fall but solely from a diseased heart. This witness stated that he was called immediately after Kronnick was hurt; that he sent him to Mercy Hospital; that he gave him the ordinary and usual treatment in such cases; that his improvement was good, and his condition generally good, except that he had a couple of days after the injury taken a cold and had fever; that the fever disappeared, but his lungs were congested right along; that he was permitted to be up in a wheel-chair on the tenth day; that later

he was allowed to go around in his room on crutches. He said fever was naturally to be expected from an injury such as Kronnick's; that it came from the absorption of "serum created as a result of the injury, and also from the bronchitis that he had"; that fever predisposed a patient to pneumonia, and affected the functioning of the heart. Explaining the circumstances of Kronnick's death, the witness said that during the morning of July 3d he (Kronnick) went to the bathroom, and the nurses, hearing a noise, went to him; that they "found him in a fainting condition, with his hand grasped up here on the heart, complaining of severe pain and cold sweat . . . a severe diarrhea set in about that time and he had a severe pain at the left of the heart." He was taken to his room, and before the doctor arrived he was dead.

This witness was present at the post-mortem, and, when asked what in his opinion, based upon his knowledge of the case and the findings at the post-mortem, caused the death of Mr. Kronnick, answered:

"Well, I believe he died of a—what we might call a heart death. An occlusion and thrombosis of the left coronary artery. . . .

"Well, he had a sclerosis of the coronary artery and a chronic inflammation of the heart muscles, with a chronic inflammation of the aorta and he also had an occlusion of the heart which was caused by stoppage in the flow of the left coronary artery. It was a diseased heart."

Then this question was asked and answered:

"Q. Is a death, doctor, such as Mr. Kronnick suffered, in your opinion a natural result of the injuries he sustained from that fall on the 18th of June? A. I don't think so."

On cross-examination Dr. Purcell was asked if Kronnick's heart condition could have been caused by the accident, and he answered:

"Well, I believe that there is a possibility that there could be some connection there. . . . I cannot convince myself to entirely disconnect this infarct or obstruction from the accident. . . . Well, I don't think it could be entirely disconnected because this man had a temperature and was confined to bed and his blood stream was slowed down and he had abnormal circulation no doubt. It could have formed a clot at this point—enough to produce the thrombosis. It could have done that—it is possible."

The referee put to Dr. Purcell the following hypothetical question: "Would you say that if you have a man 62 years of age who has fallen and broken his hip and suffered a very severe injury to his os calcis, who was considered in some danger of pneumonia— had a bad cold—a fever—might so exacerbate the heart condition as to bring to an unfavorable termination which otherwise might not have terminated fatally for a period of years?" to which the doctor answered: "It would undoubtedly throw a general strain on the heart."

On redirect examination the witness testified:

"Q. Dr. Purcell, I believe you testified that in your opinion a death such as Mr. Kronnick died with would not be the natural result, or expected result of the injuries he sustained? A. I don't believe he died entirely from the accident.

"Q. I believe you testified that in your opinion the accident could possibly have contributed to his death, or hastened it, accelerated or exacerbated the heart condition—do I understand that by reason of his lying in bed and thereby slowing down the blood stream, that perhaps would induce this condition that already existed there to come on to a thrombosis, or stopping up of the artery? A. I believe so, yes."

Dr. Charles S. Kibler, an expert in heart diseases, basing his opinion upon a history of the case as given him by Dr. Purcell and upon the autopsy report, said Kronnick's death was not caused by the accident and

injuries received thereat, but was due to thrombosis of the left coronary artery. On cross-examination he said there was a very remote possibility that the accident caused or contributed to Kronnick's death.

Both of the medical experts said the infarct and thrombosis of the coronary artery were of recent standing.

It is obvious that this is a case which requires expert testimony for its correct decision. *William Simpson Construction Co.* v. *Industrial Acc. Com.,* 74 Cal. App. 239, 240 Pac. 58. The autopsy disclosed a condition that had theretofore been unexpected and which could be detected only by the professionally skilled physician or surgeon. Likewise, the effect, if any, of the injuries sustained upon the latent and hidden disease of the heart was one for the expert in medicine. This seemed to be recognized upon the trial or hearing, for only expert witnesses were called to give testimony on that question.

The insurance carrier says the strongest inference that can be drawn from the expert testimony is that the accident and injuries received thereat might have, or possibly did have, some connection with the death. In other words, if one indulged in speculation or surmise or guesswork, he might see a connection between the death and the accident, but, if he would stick to the facts as established by competent evidence, no such connection is shown. If the insurer's contention is right—that the evidence only tends to show that the death might possibly have been caused by the accident—then the commission's finding should not be sustained. *Green's Case,* 266 Mass. 355, 165 N. E. 120; *Dopkin* v. *Philadelphia & Reading Coal & Iron Co.,* 296 Pa. 71, 145 Atl. 707. The commission, however, found a causal connection between the accident and Kronnick's death, and, if the evidence as found in the testimony of the two doctors, or either of them,

will reasonably and fairly justify such an inference, it is our duty to uphold such finding.

An analysis of Dr. Purcell's testimony convinces us that he was of the opinion that Kronnick's injuries contributed to, hastened, or caused his death. In his direct examination he said the injuries possibly did have something to do with his death. On cross-examination, the injuries, the subsequent temperature, confinement to bed, the slowing down of the blood stream, and the abnormal circulation, he said he could not disconnect from the thrombosis; that these could have formed the blood clot—"it is possible." But on his examination by the referee (see question and answer above) he said the injuries and their effect "would undoubtedly throw a general strain on the heart." In his redirect examination he said: "I don't believe he (Kronnick) died entirely from the accident." This last is a clear admission by Dr. Purcell that he believed the accident had a great deal to do with Kronnick's death, but that it was not the sole cause. Perhaps if he had explained more fully he would have said, if Kronnick had been perfectly sound, or had no heart disease, the injuries received in the accident would not have killed him, but with his heart in its diseased condition the injuries caused his death. This, at least we think, is the effect of Dr. Purcell's testimony. It does not appear to us that it was unreasonable for the commission to accept the doctor's opinion last expressed, to wit, that Kronnick did not die entirely from the accident, but that he died from the combined effect of the accident and the diseased condition of his heart. If, in coming to such a conclusion, the commission rejected parts of Dr. Purcell's testimony and all of the testimony of Dr. Kibler, it had a right to do so. The commission's finding, when supported by evidence of a substantial nature, is binding upon the court. *Johnson* v. *Indus-*

*trial Commission*, 35 Ariz. 19, 274 Pac. 161; *Johnson v. T. B. Stewart Contruction Co.*, 37 Ariz. 250, 293 Pac. 20.

The fact that Kronnick had a weak or diseased heart would not relieve the employer or his insurer from liability for his death, providing the accident and consequent injuries had the effect of aggravating such disease and hastening or accelerating his death. *Carroll* v. *Industrial Commission*, 69 Colo. 473, 19 A. L. R. 107, and note at page 110, 195 Pac. 1097; *Gilcrest Lumber Co.* v. *Rengler*, 109 Neb. 246, 28 A. L. R. 200, and note at page 204, 190 N. W. 578; *Valeri* v. *Hibbing*, 169 Minn. 241, 60 A. L. R. 1296, and note at page 1299, 211 N. W. 8. See, also, *Tucson Rapid Transit Co.* v. *Rubaiz*, 21 Ariz. 221, 187 Pac. 568; *Verde Combination Copper Co.* v. *Reito*, 22 Ariz. 445, 198 Pac. 462.

The award of the commission is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.