[Civil No. 4660.   Filed February 17, 1944.]

[145 Pac. (2d) 988.]

APACHE POWDER COMPANY, a Corporation, Petitioner, v. CURTIS L. BOND and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Ellinwood & Ross and Mr. Geo. E. Wood, for Petitioner.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Respondents.

WINDES, Superior Judge.—On December 8, 1941, respondent, Curtis L. Bond, hereinafter mentioned as employee, was employed by Apache Powder Company, and on said date, while in the performance of his duties, he, together with one August Lay, passed from what was called the change room into the blower room where Lay was to shake down the gas and the employee herein was to check the temperatures. While so engaged the employee for some reason unexpectedly fainted or passed out, fell and sustained a skull fracture. Thereafter the doctor's report was made and the commission made an investigation. On March 16th Leo Guynn, claims manager for the commission, wrote a letter to the effect that the evidence was insufficient to establish any injury by accident arising out of and in the course of the employee's employment. Some further investigation was made and the claims manager again, on June 29, 1942, wrote all interested parties that the claim was not compensable. Some months later the commission decided to have a hearing on the matter, and the same was held at Douglas, Arizona, on January 19, 1943, at which testimony was taken. Claim for compensation was filed by the employee on March 15, 1943. The first findings and award were made on March 24th, allowing temporary disability in the sum of $76.53. Under date of April 12, 1943, the employee wrote the commission expressing dissatisfaction with the award and asking the commission to consider his case again. Three days later the claims manager replied that they could not assist him further. On May 7th the claims

manager advised the employee by letter that his letter of April 12th was being considered as a petition for rehearing and requested him to furnish other and additional evidence. On June 18, 1943, the commission made an amended findings and award allowing total temporary disability. Petitioner asked for rehearing upon the grounds that the commission was without jurisdiction to make said amended findings and award and upon the ground that there was no evidence to support the same. This petition was denied and the matter is here for review.

■ We are urged to rule, first, that the commission had no jurisdiction to render this amended findings and award for the reason that if the commission considered the employee's letter of April 12th as a petition for rehearing the letter written by the claims manager three days later amounted to a denial of the petition for rehearing and the same became final. There might be merit to this contention if a letter written by the claims manager can bind the commission. There is nothing in the record to show that the commission as such ever acted on the matter. The first official act of the commission was to consider the letter as an application for a rehearing and to grant a rehearing thereon. Until the commission in some way sanctions an expression of one of its employees, it cannot be considered its action. We hold, therefore, that the commission had jurisdiction to act upon the request contained in the letter of April 12th.

■ It is contended there is no evidence to show an injury by accident. The employee from some cause became unconscious and fell while at work. There was always in the atmosphere at the plant $SO_2$ fumes which characterized the smoke from the smelter stacks and are noticeable throughout the smelter and for miles around. Natural gas is used to heat the water heater and to warm the "dog house." Some

$SO_2$ gas escape around the blower in the blower room and was doing so that night in such quantities that it had been the subject of remarks between the employee and August Lay. Acids were used in the blower room, but the sources of the fumes present could not be distinguished so as to indicate either was predominant. The combination of fumes seemed to be stronger that night than on any other occasion. The medical testimony relative to the employee's condition was that there were no symptoms present when the employee was examined on December 8, 1941, which would indicate the cause of his losing consciousness. On January 7, 1942, while attempting to fix a gas heater in his home, which was not burning properly, the employee apparently inhaled fumes or gas from it and after walking to the bathroom to wash his hands he fainted. The same physician was called and after examination the doctor diagnosed the employee's condition as being due to inhalation of natural gas. Upon that diagnosis, the physician was of the opinion that the cause of the employee losing consciousness was the inhalation of natural gas. There is evidence also that some gas is always present, sometimes stronger than others. It is argued that under these circumstances there was no accident as that term has been defined by this court. It is said there was no unexpected event not reasonably contemplated, and since there was usually some gas present and since the employee's fellow workman was not overcome, there could have been no accident. There certainly was evidence from which the commission could determine the presence of gas in the room where the employee was working, and that he was overcome thereby. If an unexpected event be a necessary element of accident it may be found in the event that there was gas present of sufficient density to overcome this particular employee. An employee's right

to compensation is not measured by the ability of some other employee to resist the effects of gas. The presence of gas is an event and it can hardly be said anybody expected or anticipated it would be present in sufficient strength to overcome anybody. There was an accident and the employee sustained some injury therefrom.

The commission finally allowed compensation for a tubercular condition, and the legality of such allowance is here questioned. From the evidence submitted the commission was warranted in finding that the employee subsequent to the accident was in the hospital for about four days and in bed at home for about one week thereafter. He was reported by Dr. Paul Causey as able to return to work on January 4th. He caught cold on January 2d, gradually grew worse, and on the 7th of that month while fixing a gas stove he was overcome and again fainted. Thereafter his condition rapidly grew worse and it was discovered to be active tuberculosis, from which ailment he has since died. Prior to going to work for the respondent he had passed a physical examination for employment, and in 1940 he was examined by a doctor and while there was a healed scar on his lung, he was by the doctor told not to worry, that it would not bother him. He was apparently well at the time of the accident. Dr. Causey testified:

"Q. In your opinion did Mr. Bond have any previous condition of health or ailment which was aggravated by this injury? A. Well, I couldn't say definitely whether it would be aggravated under the circumstances in which I treated him. I feel from this blow, of course there would be a lessening of his resistance power, and from his previous condition there is a possibility that due to his lessened physical power that he could have an aggravated condition."

There was submitted to Dr. Roland A. Davison, the employee's attending physician, a hypothetical ques-

tion stating the condition of the case with a request for an opinion as to whether it was a reasonable conclusion that there was a causal connection between the disability suffered after December 31, 1941 (tuberculosis) by reason of aggravation of a pre-existing disease and the accident. The doctor gave his opinion that there *could be* such a connection, and assuming the tubercular condition at the time of the accident it *could become* greatly aggravated, either by the inhalation of gas or by the skull fracture or both.

■ It is strenuously urged that since the only medical testimony concerning a causal connection between the injury and the resulting tuberculosis was that of Dr. Causey that it was a possibility, and that of Dr. Davison that it could be, the award allowing compensation for the disability caused by the disease was necessarily based on surmise, speculation and conjecture. There is substantial merit to this contention, but we think that the historical circumstances prior and subsequent to the accident, together with the nature of the accident, is sufficient, together with the doctors' testimony of possible causal connection as would give legal validity to the commission's conclusions. A doctor's opinion on matters of this character does not have to be positive in order to have some value as evidence. *Ison* v. *Western Vegetable Distributors,* 48 Ariz. 104, 59 Pac. (2d) 649, 653. In this case we use the following language:

" . . . It is urged that the testimony of one physician is positive that the injury caused the abscess, while the other merely states that it was extremely probable that it did not, and that the commission should, therefore, have accepted the positive testimony over that which was merely conjecture. There might be some merit in this contention if the point at issue was one which was subject to positive knowledge, such as the presence or absence of a certain person, a collision between two automobiles, or other

similar matters; but the question is necessarily one of opinion and not of knowledge, and, when this is so, the fact that one opinion is expressed more positively than the other, does not, as a matter of law, require that a trier of fact give it more weight. We are compelled to hold, therefore, that the conclusion of the commission that it does not appear affirmatively that there was any causal connection between the accident of April 9th and the disability from which petitioner admittedly suffered, must be upheld.''

■ We do not wish to be interpreted as here holding that the indefinite expert testimony submitted by these doctors would be sufficient of itself to remove the matter from the realm of speculation, but we do hold that when a workman in apparent good health, with a history indicating a prior tubercular condition, sustains an injury through inhalation of gas of sufficient quantity to cause unconsciousness, resulting in a fractured skull, followed shortly with a severe case of disabling active tuberculosis, and two doctors testify to the possibility of the accident and injury contributing to his existing tubercular condition, the commission may legally award compensation for such ailment.

The award is affirmed.

ROSS and STANFORD, JJ., concur.

NOTE: Because of the illness of McALISTER, C. J., the Honorable Dudley W. Windes, Judge of the Superior Court of Maricopa County, was called in to sit in his place and stead.