205 P.2d 1198

**HORN et al. v. INDUSTRIAL COM-MISSION et al.**

No. 5162.

Supreme Court of Arizona.

May 2, 1949.

Edward Aboud, of Tucson, for petitioners.

Robert E. Yount, of Phoenix (H. S. McCluskey, of Phoenix, and Donald J. Morgan, of Prescott, of counsel), for respondent Industrial Commission.

STANFORD, Justice.

This case comes to us by certiorari to review an award by The Industrial Commission of Arizona on behalf of respondent Velma Ruess.

The petitioners, Sarah and Marion Horn, doing business as Horn's, operated a ladies' clothing store in Tucson, Arizona, where respondent Ruess was employed and they were not covered by workmen's compensation insurance.

On March 12, 1948, respondent claims that: "I was carrying clothes with both hands. I slipped on a sequin which had fallen on the floor. My knee struck a full box of wire hangers and I fell forward striking the top of my head against the wall, forcing my head down into my shoulders."

On May 24, 1948, respondent filed with the commission her claim for workmen's compensation for this injury caused by ac-

**324**

cident arising out of and in the course of her employment by petitioners. The respondent was attended by a physician on April 19, 1948, and the report of the physician was filed with the commission May 18, 1948, all of which happened before the filing of a claim for compensation by respondent. Employer's first report of the injury was filed with the commission on May 28, 1948. A second report was filed June 10, 1948, which contained the statement (referring to respondent) that "She slipped and fell." An investigator for the commission called on petitioners and caused the above reports to be sent to the commission.

June 21, 1948, the commission entered its findings and award for temporary disability, and on June 24th the petitioners applied for a rehearing, which petition set forth the following grounds:

"In view of the fact that both doctors stated to me that this lady's present condition is not due to her accident on March 12, 1948 and she stated same. She has been sick ever since we hired her and has taken quite a bit of time off. She has taken time off at the store to lie down."

The award was for "The sum of $4.23 per day from and after April 29, 1948 to continue during said applicant's disability, payable every fourteen days, or until further order of this Commission." There was also an award for the cost of medical, surgical, hospital and accident benefits necessary to cure and relieve the respondent

from the effects of the injury. On rehearing this award was affirmed by the commission on August 17, 1948.

The assignments of error relied on to set aside the award are: (1) The petitioner did not have three or more workmen employed at the time of the injury. (2) There was insufficient evidence to sustain the award.

Our Workmen's Compensation Law, section 56-928, A.C.A.1939, as amended by Laws 1945, c. 33, § 1, p. 65 in part, reads: "* * * Employers subject to the provisions of this article are: * * * and, every person who has in his employ three [3] or more workmen or operatives regularly employed in the same business or establishment, under contract of hire. * * *"

Sarah Horn, one of the petitioners herein, admitted at the hearing that she had three girls employed in March, 1948. Frances Shiff Segal, a regular employee of petitioners, testified as follows:

"Q. How many employees worked for the Horns while you were there, approximately? A. Well, when I came there, there was Mrs. Stein and Mrs. Ruess and myself and Bernice the alteration woman. As the season progressed, we got busy, we had another alteration woman come in and myself and then Mrs. Stein quit and they got—oh, wait a minute, Mrs. Teiter, I believe her name was, and then they had this girl that used to come in every afternoon, this University student help us in the afternoons and on Thursday nights."

From this and other testimony the Industrial Commission was fully justified in finding that the petitioners customarily or regularly employed three or more persons in their business, and hence there is no merit to the first assignment of error. See Marshall v. Industrial Commission, 62 Ariz. 230, 156 P.2d 729.

By the second assignment of error petitioners claim that the testimony does not show an aggravation of arthritis due to the accident. They cite the cases of Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P. 2d 952, 120 A.L.R. 1521, and Western Truck Lines v. Berry, 53 Ariz. 216, 87 P.2d 484, 487. We think the Owl Drug Co. v. Crandall case, supra, is not applicable in this case. In the case of Western Truck Lines v. Berry, supra, the record shows that the appellee was a woman in delicate health, and that at the time she was thrown out of an automobile in an accident which caused the bringing of the action, she had, within a few days theretofore, had a miscarriage and she claimed her female organs and nervous system were aggravated by the accident. The grounds for reversing this case were that the testimony was "* * * entirely too indefinite and uncertain to sustain a judgment. * * *"

A hearing on the application in the instant case was held in Tucson on August 5, 1948. Evidence at the hearing included that of Dr. N. A. Jacobson, a physician and surgeon of Tucson, who had attended the respondent, prior to the injury herein complained of, for disturbance of the kidneys. On April 20, 1948, she had called on said doctor complaining of the back injury which is the basis for her present claim.

At said hearing the testimony showed that Velma Ruess did have certain symptoms not involved in the issue of this case, including a visual deficiency. .Dr. Jacobson testified at the hearing, in part as follows:

"Q. As a result of this consultation board's examination, did you make any conclusions as to the condition from which this applicant suffered? A. Yes, I did. After taking x-rays and from her symptoms and the relief from her treatment, I felt that she had, probably because of the x-rays a pre-existing condition in her neck, that was aggravated by the accident of March 12, 1948."

At the same hearing Dr. George Dixon, an orthopedic specialist, who had examined the respondent, discussed hypertrophic arthritis, concluding that she sustained an aggravation of such condition by the accident of March 12, 1948. His testimony, in part, was:

"Q. In cases of pre-existing hypertrophic arthritis, Doctor, with a history of a fall, is it common to find an aggravation such as that complained of? A. Very.

"Q. In cases of hypertrophic arthritis such as this, what other factors might be considered as aggravating factors other

than trauma? A. . Exposure to cold will do it. But the history obtained from the patient which had previously been given us by Dr. Jacobson was that she slipped on some sequins on the floor, fell forward, struck her head, had a bump on her head. She was not knocked unconscious, though her nose did bleed. And she further stated both employers were present when she fell.

"Q. With a history of such trauma, then, you reached your conclusion that she had an aggravation of her existing arthritis? A. In looking at the pictures as a whole, with the history, with your examination. Now she definitely stated she was much improved.

"Q. In cases of aggravated arthritis, do those aggravated conditions continue to persist or do they disappear when the cause of the aggravation has been removed. A. They usually disappear—perfectly well."

On cross-examination of Dr. Dixon by Miss Sarah Horn, one of the petitioners, this question was asked and answer given:

"Q. But an accident like this couldn't have caused arthritis, could it? A. Well, the accident in this case didn't cause the patient arthritis. The patient had the condition before. *She aggravated it.*" Emphasis supplied)

This court has held that the aggravation of a pre-existing disease by accident arising out of and in the course of employment is compensable.

In the case of Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297, 300, it is said:

"The law with reference to pre-existing disease is clearly stated by Dr. Schneider, he says: 'The courts, consistent with the theory of the Workmen's Compensation Acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he may have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred, and the disability or death does not result from the disease alone, progressing naturally, as it would have done under ordinary conditions, but the injury aggravates and accelerates its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Compensation Acts.' 1 Schneider on Workmen's Compensation, p. 312, Sec. 138."

See also Craig v. De Berge, 67 Ariz. 168, 193 P.2d 442.

There are many opinions of this court dwelling on the subject that compensation will be allowed where there has been an aggravation of a latent disease caused by an accident.

Medical testimony before the commission established that a fall of the nature involved here not only could have aggravated, but from the history of the case, did aggravate the pre-existing condition of arthritis. The commission had before it substantial evidence of injury by accident arising out of and in the course of respondent's employment, and accordingly during the period of disability due to this aggravation, the respondent is entitled to the compensation awarded to her.

Award affirmed.

UDALL, PHELPS, and DE CONCINI, JJ., and CHARLES C. BERNSTEIN, Superior Judge, concur.

Note: Chief Justice La PRADE did not participate. The Honorable CHARLES C. BERNSTEIN, Judge of the Superior Court of Maricopa County, was called to sit in his stead.