218 P.2d 488

**EAGLE INDEMNITY CO. v. HADLEY et al.**

No. 5213.

Supreme Court of Arizona.

May 8, 1950.

Guynn & Twitty, Phoenix, for petitioners.

H. S. McCluskey, Phoenix, Robert E. Yount and Donald J. Morgan, Phoenix, of counsel, for respondent Industrial Commission.

Morgan & Locklear, Phoenix, for respondent Hadley.

Evans, Hull, Kitchell & Jenckes, Phoenix, amicus curiæ.

DE CONCINI, Justice.

This is an appeal by certiorari from an award of The Industrial Commission of Arizona, hereinafter called the commission, awarding permanent total compensation to one L. B. Hadley. The petitioner Eagle Indemnity Company, hereinafter called the insurer, carried the industrial insurance for the Consolidated Vultee Aircraft Corporation, the employer herein. The respondent employee, L. B. Hadley, was employed in war work as a general helper in working upon planes. He was injured on November 17, 1944, when the deck of a plane, upon which he was working collapsed, causing him to fall to the concrete pavement seven to nine feet below. The evidence shows that Hadley at the time of the said accident was 66 years of age. Hadley testified that he was in good physical condition at all times prior thereto. It is also clear that Hadley had worked two years for the employer and at all times prior to the accident without being disabled by reason of age or any condition of physical or mental disability, and that the defendant employer accepted his services on that basis. It was only after the accident that Hadley was unable to perform any remunerative employment.

There is no question but that this was a compensable injury arising out of and in the course of Hadley's employment with the above-mentioned employer. The insurer's several assignments of error and propositions of law reveal to us that the only question before us here is whether the commission's final findings and award allowing L. B. Hadley compensation for permanent total disability under section 56-956, A.C.A.1939, was correct. These assignments of error and propositions of law may

be reduced to two contentions, (a) that the commission erred in not apportioning the disability, and (b) that as a matter of law, the claimant (injured employee) had not suffered permanent total disability but only permanent partial disability for work.

In support of the first contention, the insurer argues that Hadley's disability was not entirely due to the compensable accident but is partly attributable to a pre-existing condition of normal physical degeneration, due to Hadley's age, existing at the time of the accident and not accelerated by the injury. In support thereof, the insurer urges that the commission's findings are not supported by the evidence and that as a matter of law, the commission should have apportioned the disability and awarded compensation only for the disability resulting from the industrial accident.

In considering the merits of the insurer's claim we must of necessity look to our statutes. Subdivision (d), section 56-957, A.C.A.1939, sets out the method to be followed by the commission in determining percentage of disability as follows: "In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

■ In the case of Lee Moor Contracting Co. v. Industrial Commission (Rhoades), 61 Ariz. 52, 143 P.2d 888, 890, we construed the above section so as to distinguish between a pre-existing condition, not disabling before the accident, and a pre-existing disability, in the following words: "There is a distinction between a pre-existing condition which is dormant and not disabling at the time of the accident and is stimulated into disability by reason of the accident, and a pre-existing disability that is added to by a second disability. In the case at bar, claimant was performing his daily manual labor with no disabling effects from his pre-existing condition up to the time of the accident, but has been disabled since. At the time of the accident he had no disability. True, he had a condition, which was susceptible of becoming a disability when aggravated. Section 56-957, Arizona Code 1939, does not require the Commission to give effect to such a condition and attempt to apportion the concurring causes. That section only requires the Commission to take into consideration previous disability. That means. an existing disability at the time of the injury,—something that affects his earning power."

■ In the case at bar Hadley did not have a pre-existing disability at the time

of his injury which is apportionable under section 56-957, supra; on the contrary he was in good physical condition, which condition attended by his age did not amount to a disability. Only a pre-existing disability is apportionable.

In the later case of Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297, 302, where the evidence was clear and undisputed that a part of the employee's disability was caused by a disease that was not in any way aggravated by the injury, we said: "The principle stated in the Rhodes case, supra, however has no application when, as here, one of the two concurring causes which produced the total disability was not attributable to the accident and injury for which compensation was to be granted, but arose independently out of a disease which was not compensable under the record as it stands in this case. Any other construction would violate the fundamental principle of the compensation law, to-wit: 'That compensation is only to be granted when the disability or disease results proximately from the accident.'"

The commission in its Supplemental Findings and Award of January 26, 1949, finding No. IV, found: "That the whole of claimant's disability for work was caused by the accident of November 17, 1944 which, in addition to new injuries, aggravated his pre-existing conditions to the extent that he is totally disabled for work."

The insurer argues that this finding is incorrect in that Hadley has not as a matter of law sustained the burden of proof as to the extent of disability to which he was entitled. It is a fundamental proposition in workmen's compensation cases that the injured employee must sustain the burden of proof of all the elements material to sustain an award of the commission. Wiggins v. Pratt-Gilbert Hdw. Co., 48 Ariz. 375, 62 P.2d 124; Vest v. Phoenix Motor Co., 50 Ariz. 137, 69 P. 2d 795. However, our duty on review is not to weigh the evidence, but to examine the record and ascertain whether or not the commission's findings and award are supported by substantial evidence. Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297. The question then is whether or not there is any reasonable evidence to sustain the above finding as to aggravation of a pre-existing condition, which condition was not a disability at the time of the accident.

The insurer argues that the report of Dr. Hoyt concerning his conclusion that Hadley's impaired eyesight and loss of hearing subsequent to the accident was not caused by the injury is proof of their contention that the disability should be apportioned. However, a review of Dr. Hoyt's report shows that his diagnosis was predicated on the faulty assumption that Hadley suffered no head injury. We hold that the commission is not bound by medical conclusions where not supported by ac-

184

tual facts. Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608. For the same reasons, the commission was correct in disregarding the conclusion of the Medical Advisory Board of October 6, 1947, that: "An ear and eye examination was carried out today by Dr. D. R. Hoyt and his findings could not be ascribed to the injury in question." because it was based on Dr. Hoyt's diagnosis predicated upon the above-mentioned faulty assumption.

The report of Doctors Robert E. Hastings, Harold E. Kosanke and Meade Clyne on November 29, 1948, concluded: "It is possible that some degeneration in the general physical condition might have been accelerated by his injury." The insurer argues that the above conclusion of Drs. Hastings, Kosanke and Clyne cannot be considered because it was not positive but speculative. There is no merit to this contention where the point in issue is not subject to positive knowledge, as we have held in the case of Apache Powder Co. v. Bond, 61 Ariz. 184, 145 P.2d 988, 990, as follows: " * * * but we think that the historical circumstances prior and subsequent to the accident, together with the nature of the accident, is sufficient, together with the doctors' testimony of possible causal connection as would give legal validity to the commission's conclusions. A doctor's opinion on matters of this character does not have to be positive in order to have some value as evidence. * * *" This proposition was further developed and

sustained in Ison v. Western Vegetable Distributors, 48 Ariz. 104, 50 P.2d 649, 653.

It is well established that findings of the Industrial Commission are entitled to the same consideration as those of a jury or trial judge and consequently will not be disturbed when there is any reasonable evidence to support them. West Chandler Farms Co. v. Industrial Commission, 64 Ariz. 383, 173 P.2d 84; Blasdell v. Industrial Commission, 65 Ariz. 373, 181 P.2d 620. The before-mentioned evidence being substantial we will not disturb the commission's findings that the accident caused the entire disability by resulting in new injuries and aggravating his pre-existing condition of normal physical degeneration caused by age.

A case practically on all fours with the instant case is Furlong v. Northwestern Casket Co., 190 Minn. 552, 252 N.W. 656, 657. We quote therefrom:

"Relators contend that, since respondent was 71 years of age when the accident occurred, his present condition is due to intervening old age and to the gradual development of those infirmities attendant thereon. Not to the accident, therefore, but to the normal deteriorations accompanying advancing age do relators attribute his condition. Relators contend that an allowance of compensation is in practical effect an old-age pension. We cannot agree with this theory. To do so would be in effect to deprive the thousands of men of advanced years engaged in industry and commerce

throughout the state of the full protection of the Compensation Act. This large group of men are as much entitled to the protection of this law as are the younger men. Their contribution of experienced and matured service is substantial and important. Employers are not likely to discriminate against this older group because of the possibility that, where injured, their recovery will not be as rapid nor as certain as would be the case with younger and more vigorous men. The referee who heard the testimony and whose findings are affirmed by the commission saw the respondent in court, and is better able to judge than are we whether the ailments which followed the injury on March 7, 1927, were due to old age or whether they were due to the injury. Old age is at best but a factor to be considered by the commission in determining whether or not the accident is the cause of the total disability. It cannot be said that an old man is pro tanto less within the protection of the Workmen's Compensation Act than is a young man. The question is one of proximate cause. If the proximate cause of the disability is old age, no compensation should be allowed; otherwise it should.

"In Duprey's Case, 219 Mass. 189, 106 N.E. 686, 687, it is said: 'The finding by the board that the employee is a man of failing physical powers, and that probably he will be incapacitated for work in a few years, as a result of such physical weakness, independently of his injury, does not bar him from compensation under the act if his incapacity to work is the result of his injuries.' See, also, Udell v. Wagner, Peterson & Wilson, 2 Cal.Ind.Acc.Comm. 139, 11 N.C.C.A. 58, note.

"In the instant case, the question of whether the accident or whether old age proximately caused the disability properly was a fact question for the referee. It does not lie with this court to rule as a matter of law that a man of advanced years (in this case a man of 77 years at the time of the hearing before the commission) is not entitled to the full protection of the act."

The second contention asserted by the insurer is that regardless of the question of apportionment, the commission erred in allowing Hadley permanent total disability under section 56-956, A.C.A.1939, because the commission had not followed the medical evidence and conclusions of the Medical Advisory Board as to percentage of general functional physical disability resulting from the accident. In view of the commission's findings, our decisions in other cases, and the statutes, this objection is without merit.

The insurer and counsel amicus curiae are contending that the commission should have given more weight to the medical testimony which was that Hadley had only a 50% general functional disability. See subdivision (d), section 56-957, A.C.A.1939, supra.

In interpreting this section we have held that the commission in determining extent of disability is concerned solely with loss of earning power. The percentage of general functional physical disability resulting from the accident as fixed by doctors or Medical Advisory Boards is only one of the factors to be considered in arriving at the percentage of loss of earning power and not the controlling factor. The commission must consider among other things, previous disability, the occupation of the injured employee, the nature of the injury, the age of the injured employee at the time of the injury, and the wage before injury. Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160; Kennecott Copper Corp. v. Industrial Commission et al., 62 Ariz. 516, 158 P.2d 887.

There being evidence in this case that Hadley was unable to do any work at his usual or other occupation because of his condition, and the evidence showed that the disability was stationary, the commission was therefore justified in awarding Hadley compensation for permanent total disability. Kennecott Copper Corp. v. Industrial Commission et al., supra.

It is contended by the insurer that because the commission awarded Hadley permanent total disability that it had not considered the percentage of physical functional disability fixed by the doctors at 50%. The fallacy of this argument may be readily seen by an examination of the case of Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160, 163, wherein it was said: "We certainly do not agree with the respondent employer that it is obvious that in the vast majority of cases arising under the Act that the percentage of 'functional disability' would be almost identical with the percentage of 'decreased ability to earn'. For instance, with the ordinary professional man or other 'white collared' worker a back injury causing a 15% or 25% 'functional disability' might not decrease his earning capacity at all; whereas, with a common laborer such a back injury might be nothing short of an economic disaster. There is no necessary parallel relationship between the percentage of general functional physical disability and the percentage of loss of earnings. Each case must necessarily stand upon its own bottom and be judged by the factors set out in the statute and others that are incident to a particular case."

The commission having considered all the factors required to be so considered by section 56-957, supra, in arriving at its award for permanent total disability we will not disturb its award.

All counsel have briefed their points with thoroughness. We realize counsel for petitioner and amicus curiæ know we can only affirm or set aside an award, but while they are attempting to have the award set aside, they are really asking this court to weigh the evidence and thereby cut down the total permanent disability as awarded by the commission, and then further cut

the remaining disability by 50% because of the doctor's opinion that Hadley would be partially disabled due to his age regardless of the accident. This we cannot do in light of our statutes and previous decisions.

Award affirmed.

LA PRADE, C. J., and STANFORD and PHELPS, JJ., concurring.

UDALL, Justice (specially concurring).

I concur in the conclusion reached in the majority opinion that the commission was not in error in refusing to apportion the disability and that hence the award should be affirmed. Inasmuch, however, as I have reached this end result for reasons somewhat different from those advanced in the majority opinion, I deem it advisable to set forth in some detail the logic, as well as the reported cases, impelling this conclusion on my part.

L. B. Hadley, the respondent employee, was severely injured on November 17, 1944, as the result of an accident unquestionably arising out of and in the course of his employment. He was then employed in war work by the Consolidated Vultee Aircraft Corporation at Tucson. The petitioner, Eagle Indemnity Company, is the insurance carrier. The respondent Industrial Commission of Arizona found that said personal injury caused a permanent disability for work with a loss of earning power of one hundred per cent, and it, therefore, on October 14, 1948, awarded compensation for permanent total disability in the sum of $143.96 per month (being sixty-five per cent of his average monthly wage of $221.48) for the period of his natural life. The petitioners (employer and insurance carrier), being dissatisfied with this award and its affirmance on rehearing, have, by certiorari, brought the matter before us for review.

Primarily petitioners challenge the sufficiency of the evidence to support the award and particularly urge that under the facts shown by the record the commission erred in not apportioning the disability.

Other counsel were permitted to file a brief as amicus curiæ herein, in which they make a sweeping attack on the methods used by the commission in determining the amount of such an award and they also set out certain claimed abuses to which the compensation fund is being subjected by reason of the use by the commission in the processing of a claim of the so-called "loss of earnings award". No appeal was taken from "loss of earnings award" in this case hence same became final. The appeal herein is from the final award only and therefore any question of illegality concerning the "loss of earnings award" is not now before the court. As a matter of fact most of the questions raised by amicus curiæ were answered in our recent opinion in the case of Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612.

The injured employee, prior to this accident, had worked steadily for petitioner for more than two years as helper-general doing electrical work on airplanes. According to his uncontradicted testimony he had enjoyed extraordinarily good health prior to this injury and previously had never had any accidental injuries or diseases which caused any disability for work. At the time of the accident he was of the age of 66 years and 10 months. It is admitted that while in the regular and usual course of his employment a deck of a plane upon which he was working gave way causing claimant to fall onto the concrete floor about seven to nine feet below. He was thereby rendered unconscious and according to the report of the attending physician, Dr. Meade Clyne, claimant suffered the following injuries: " * * * cuts on back of head; cut three fingers, right hand, and index finger left hand; bruised back, neck and shoulders; complains of numbness with a prickly pain in both forearms and hands; unable to move fingers; no grasp present. Spinal cord apparently compressed slightly. Dislocation and fracture 6th cervical vertebra. * * *" This injury resulted in claimant being hospitalized for a period of 101 days.

The commission allowed the usual accident benefits provided for under Sec. 56-938, A.C.A.1939, and also authorized a hernia operation recommended by the physicians for a condition developing more than two years after the accident. By a series of temporary total and temporary partial disability awards the commission compensated the claimant in the total sum of $7,005 for the period from the date of injury until the final permanent disability award was made. The commission expressly found that claimant's condition became stationary on October 6, 1947. During the period of approximately four years that the case was under consideration by the commission, claimant was treated or examined by a total of some sixteen doctors.

A Medical Advisory Board in April, 1946, concluded that the applicant had a seventy-five per cent general functional physical disability. Two subsequent reports from advisory boards (composed in part of the same medical personnel), after his condition had become stationary, reduced this functional physical disability to fifty per cent. One half of this they attributed to his injury and the other half they claimed was "due to degenerative changes due to advancing years". Specifically the record shows that, as of the date of the final award, the claimant had the following disabling ailments, viz.: (1) limitation of motion in cervical spine, (2) stiffness and limitation of motion in right shoulder, (3) impaired eyesight, (4) loss of hearing, (5) arthritis in both hands, (6) frequent urination at night, (7) cramps in feet and legs and poor circulation in legs, (8) complaints in lower back, (9) dizzy spells, (10) gall bladder attacks, and (11) excessive night sweats. It was the

view of the doctors that only items 1 and 2 supra were due to the after effects of the injury, and that all the other complaints were due to normal physiological degenerating processes not referable to the injury. However, the report by Drs. Hastings, Kosanke, and Clyne states that "it is possible that some degeneration in the general physical condition might have been accelerated by his injury".

The petitioners do not seem to question that claimant suffers from all of these ailments. Rather it is their contention that the commission erred (1) in failing to consider all of the factors prescribed by law in determining the claimant's loss of earning capacity resulting from the injury, and (2) in not apportioning the disability. In effect the petitioners maintain that the evidence shows his disability from all causes only justified the commission in making a permanent partial disability award rather than one for permanent *total* disability.

The commission by the award determined that claimant's ability to earn was nil. Petitioners urge that in reaching this conclusion the only factor taken into consideration was the fact that Hadley had not received any earnings from employment during the year previous to the final award and that it failed to consider the probability that claimant was not only without incentive to seek employment, but would be inclined to avoid it, by reason of the fact that a total disability rating would provide him with greater economic security for his old age than he could possibly obtain through maximum effort during the few years of his residual earning capacity. If the record bore out the charge that only "loss of earnings" was considered it would indeed be a serious indictment as that is only one of several factors enumerated under Sec. 56-957, A.C.A.1939, subsection (d), that the commission must take into consideration in determining the ultimate question, to wit: claimant's loss of earning capacity resulting from the injury. Some of the more important factors that would have a probative bearing on the matter (in addition to loss of earnings) are: age, occupation, nature of injury and percentage of functional physical disability resulting therefrom, previous disability, etc. See Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160.

Aside from the apportionment angle which will be discussed later, I do not believe that the record bears out the charge that "loss of earnings" was the only factor considered by the commission in making its final award. It must be remembered that in the instant case it was dealing with an injured employee then over the age of 71 years, with a fifty per cent functional physical disability, including impaired vision and hearing. Claimant's testimony stands uncontradicted that he tried exercise, with little benefit, endeavored to work around the yard, that he tired easily, and his equilibrium was bad. The record further shows that he applied for work but was unable to secure employment.

These facts lend support to the commission's findings that Hadley was in effect totally and permanently disabled and that despite claimant's willingness to work he was unable to find and hold remunerative employment. The evaluation of all these matters presented questions of fact to be decided by the commission, and under our rule its determination should not be disturbed unless clearly without support in the evidence. After a complete review of the entire record it is my view that the reasonable inferences to be drawn from these facts sustain the commission's conclusion that applicant was totally disabled for work.

Finally, as to the refusal of the commission to apportion the disability, the law is well settled in this jurisdiction that if a compensable physical injury aggravates a pre-existing physical disease or *condition,* the injured workman is entitled to compensation to the extent of the disability caused thereby in the same manner as though his condition had been produced originally and directly by the injury. For example see Hunter v. Wm. Peper Construction Co., 46 Ariz. 465, 52 P.2d 472, involving arthritis; Maxwell v. Hart, 45 Ariz. 198, 41 P.2d 1089, involving a rupture and back injury; Hartford Accident & Indemnity Co. v. Industrial Commission, 38 Ariz. 307, 299 P. 1026, involving a heart ailment; Dauber v. City of Phoenix, 59 Ariz. 489, 130 P.2d 56, involving a rupture of stomach ulcer; Horn v. Industrial Commission, 68 Ariz. 323, 205 P.2d 1198, involving arthritis. In such cases the commission is not required to apportion the disability between the concurring causes. See Lee Moor Contracting Co. v. Industrial Commission, 61 Ariz. 52, 143 P.2d 888, and Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297. The latter case is also authority for the proposition that where an injured workman was suffering from a disabling disease (palsy) which was unaffected by the injury there must be an apportionment. It is always true, however, that compensation is only to be granted when the disabling condition or disease results proximately from the disease. While in the instant case claimant undoubtedly had some physical impairment caused by the passage of time, yet the record shows that prior to the injury he enjoyed good health and was not suffering from any disease or "previous disability." According to the Lee Moor Contracting Co. case, supra, this latter term "means an existing disability at the time of the injury—something that affects his earning power." [61 Ariz. 52, 143 P.2d 890] See also Gibson v. Industrial Commission, 68 Ariz. 313, 205 P.2d 588. Hence it becomes apparent to me that the claimant in the instant case had no "previous disability" as referred to in Sec. 56-957, subsection (d), supra. I submit that old age alone is not a disease but rather a condition. True there was present a condition of physical degeneration incident to old age, though the effects

thereof had not become manifest prior to the accident.

It is apparent from this record that but for the accident Hadley could have gone on working until something else happened. It is a well known fact that often following a serious accident dilapidation is rapid. Dr. Kosanke, speaking of Hadley, expressed this forcefully: "And from that date (date of accident) on there has been a marked deterioration in health, the only cause of which is the accident. Now, we can assume that a man from 65 to 68 will deteriorate, the normal wear and tear of old age. However, the rate that this man has deteriorated is far above the normal expectancy for the period of time at that age."

The rule established by the decisions of this court is that while the employer is not an insurer he takes the employee subject to his condition when he enters the employment. See Dauber v. City of Phoenix, supra; Aluminum Co. of America v. Industrial Commission. I quote from 71 C.J., Workmen's Compensation Acts, Sec. 358: "* * * Every workman brings with him to his employment certain infirmities; his employer takes him as he finds him and assumes the risk of a diseased condition aggravated by injury. Compensation is not made to depend upon the condition of health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency; compensation is awarded for an injury which is a hazard of the employment, and it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon the average employee. * * *"

In the excellent case of Masses v. Central Foundry Co., 131 N.J.L. 41, 34 A.2d 751, which comes to grips with the precise problem here presented, it is stated: "* * * The old workman stands on an equal footing with the young when an accident occurs, even though the result might have been less devastating but for age. (Citing cases.)" This case presents a question of first impression in this jurisdiction. Can the medical profession or the commission surmise, speculate or prognosticate as to the percentage of disability caused by *degenerative changes due to advancing years* which are accelerated by the injury suffered? The commission found, upon competent proof, that the claimant had been permanently incapacitated for work as a result of the accident and that this injury was the proximate cause of claimant's entire disability. Under these circumstances I am of the opinion that neither the doctors nor the commission would, as a matter of law, be justified in speculating as to what percentage of disability may have been due to age and usual disintegration or whether the result would have been less if the workman had been, before the accident, a strong and vigorous man. Masses v.

192

Central Foundry Co., supra. See also Duprey v. Maryland Casualty Co., 219 Mass. 189, 106 N.E. 686, and Congoleum Nairn v. Brown, 158 Md. 258, 148 A. 220, 67 A.L.R. 780. In an independent search of the authorities these three cases to my mind stand out as being very persuasive and most nearly in point.