413 P.2d 869

**COCA–COLA BOTTLING COMPANY OF TUCSON, Inc., an Arizona corporation, Appellant,**

v.

**James C. FITZGERALD and Stella D. Fitzgerald, husband and wife, Appellees.\***

**No. 2 CA–CIV 71.**

Court of Appeals of Arizona.

May 4, 1966.

Rehearing Denied May 26, 1966.

Review Denied June 21, 1966.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8037. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant.

Martin H. Schulman, Tucson, for appellees.

HATHAWAY, Judge.

The appellees, James C. Fitzgerald and Stella D. Fitzgerald, husband and wife, obtained a $5,000 judgment entered on a jury verdict against the appellant, Coca-Cola Bottling Company of Tucson, Inc., an Arizona corporation. The judgment, from which appellant has taken this appeal, was for personal injuries sustained by Mr. Fitzgerald. Briefly the facts are as follows.

As he came on duty the evening of May 10, 1961, Mr. Fitzgerald, a jailer for Pima county, purchased a bottle of coca-cola from a vending machine located near the entrance to the Pima county sheriff's office. He took one swallow of the beverage and found that it tasted bitter and was very nauseating. He held the bottle up to the light and saw little particles floating around in it. In approximately an hour and a half to two hours he became quite nauseous and vomited three times. He had eaten nothing before coming to work and consumed nothing at work other than the one swallow of coca-cola. When he returned home the nausea and vomiting continued and he developed diarrhea.

The following afternoon Fitzgerald consulted a physician who prescribed for his condition. His nausea persisted, however, accompanied by vomiting spells and expectoration of a stringy, mucous-like substance. He ate very little and became very

nervous, upset and worried about the expectorated substance.

Mrs. Fitzgerald testified that during the entire day of May 25, 1961, her husband vomited, retched and suffered dysentery. Early the following morning, according to her, he had just returned from the bathroom and was sitting on the edge of his bed when he suddenly called for a bed pan and began vomiting, retching and pulling stuff from his mouth and went into "the dry heaves." She stated:

"He couldn't get anything more up at all and all of a sudden he grabbed his heart and said 'Oh, my God' and I thought my husband was gone."

It was later established that he had suffered a coronary occlusion.

Appellant assigns as error the trial court's refusal to (1) direct a verdict in its favor and (2) grant its motion to set aside the verdict and judgment and enter judgment in accordance with its motion for a directed verdict. The reason stated by appellant is:

" * * * the evidence construed most strongly in favor of Plaintiff failed to establish that the Coca-Cola was unwholesome at the time it left Defendant's control or that its handling after it left Defendant's control was such that the doctrine of *res ipsa loquitur* was applicable to the facts of this case."

Appellant argues that the doctrine is available to a plaintiff where a control from the bottler to the consumer is proven, and that absent such proof, the plaintiff must establish no tampering or no reasonable opportunity for tampering while the product is out of the bottler's control.

Both parties have directed our attention to Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957). In *Cathey* the Arizona Supreme Court was guided by the Tennessee case of Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200 (1942) which discussed the factual situations justifying application of the res ipsa loquitur doctrine. The Tennessee court included in one category cases involving soft drinks, milk bottles and other products marketed in containers enclosed by caps which could be removed and replaced and in such cases noted:

"We have here a distinctive element of fact which breaks the conclusive continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor." 158 S.W.2d at 725.

To close this gap of control so as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the bottler or manufacturer, the Tennessee court was of the opinion that a higher degree of proof "must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer."

The Arizona Supreme Court has adopted the foregoing classification but expanded the Tennessee rule to permit satisfaction of the exclusive control requisite of the res ipsa loquitur doctrine where the plaintiff proves either (1) that there has been no reasonable opportunity for tampering or (2) that there was no tampering with the bottle or its contents in the interim between the physical control of the bottler or manufacturer and that of the consumer. Crystal Coca-Cola Bottling Co. v. Cathey, supra.

The coke machine in the instant case was owned by the Fraternal Order of Police. Deliveries were made once a week by appellant and the cases of cokes were stored upstairs in the I. D. room of the sheriff's office which was accessible to deputies. The task of cleaning this room was performed by trustees and occasionally no deputies were present during such cleaning operations.

The coke machine was loaded by trustees at the direction of deputies. The trustees would sometimes go upstairs unattended to get cokes to load into the machine but were under observation during the

loading process. The door to the machine was opened for them by deputies. Though it appears that there may have been some opportunity for tampering, we believe that the jury might reasonably conclude that there was in fact no tampering with the subject bottle or its contents.

Fitzgerald testified that the bottle "fizzed just like an ordinary coke bottle" which would support a conclusion that the cap had not previously been lifted, thereby releasing or at least weakening the carbonation. The testimony disclosed a rapid turnover in the coca-cola inventory and the fact that weekly deliveries were made indicates that a relatively fresh stock was kept on hand. The customary procedure of handling the cokes and loading the machine was shown and neither tampering nor rough, unusual handling was disclosed. An employee in the sheriff's office had talked to the appellant's sales manager with reference to the purchase of the vending machine and no special instructions were given as to the storing of or loading the bottles into the machine.

To find tampering would have required the jury to believe that the bottle had been treated in some unusual manner. To conclude from the circumstances of this case that an individual would intentionally manipulate the bottle in such a way as to inoculate it with the spore necessary to cultivate the fungus growth found therein and allow or cause the bottle to be dispensed through a vending machine to a recipient whose identity could scarcely have been prophesied relegates too much to happenstance.

Appellant challenges the sufficiency of the evidence to show a causal connection between consumption of its product and Fitzgerald's subsequent heart condition. Appellant admits that the propriety of the instruction allowing the jury to consider permanent injury, i. e., a heart condition, as an element of damage hinges upon determination of the evidentiary question. It is argued that since Fitzgerald's heart con-

dition could have occurred without any reason, it is not a compensable injury.

Mr. Fitzgerald had an underlying pathology indicative of arteriosclerosis. Medical testimony was adduced that, where such pathology is present, emotional stress could provoke a coronary occlusion. Testimony was also given that the heart attack could have occurred without any apparent reason. Counsel for appellant argues, therefore, that the appellee should not recover because this damage could have resulted from one of two causes, both equally probable, citing Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521 (1938). In the Owl case, the plaintiff testified that she suffered three falls but blamed the defendant only for the second fall. Since apparently there was no evidence from which the jury could deduce that it was any more probable that injury had been suffered in the second fall, the court concluded that the plaintiff had failed to prove proximate cause.

■ . To establish the causal connection between an accident and injury, a *sine qua non* of liability, medical testimony as to the *possibility* of such causal connection, without more, is insufficient. But if there is medical evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such relationship, the finding that the accident caused the injury will be sustained. Ideal Food Products Co. v. Rupe, 76 Ariz. 175, 178, 261 P.2d 992 (1953); Kennecott Copper Corp. v. McDowell, Ariz., 413 P.2d 749 (filed April 21, 1966). In Apache Powder Co. v. Bond, 61 Ariz. 184, 145 P.2d 988 (1944), the Arizona Supreme Court beckons us with the following language:

"[W]e think that the historical circumstances prior and subsequent to the accident, together with the nature of the accident, is sufficient, together with the doctors' testimony of possible causal connection as would give legal validity to the commission's conclusions." 61 Ariz. at 189, 145 P.2d at 990.

■■ We are of the opinion that there is sufficient evidence to show a causal connection between appellee's drinking the contaminated coca-cola and his heart injury and the court did not err in instructing thereon. Fitzgerald swallowed a portion of the contents of a fungus contaminated beverage. The bitter taste and subsequent inspection of the contents revealed the deleterious nature of the product to him. His subsequent illness and his anxiety over the mucous-like substance intermittently expectorated and other physical symptoms are not at all surprising. We believe that it is of no consequence whether the heart attack was precipitated by the appellee's anxiety or the immediately preceding attack of retching and vomiting, so long as the condition, whether it be emotional or physical, was caused by the drinking of the contaminated coca-cola. See Cernes v. Pittsburgh Coca Cola Bottling Company, 183 Kan. 758, 332 P.2d 258, 262 (1958); Restatement (Second), Torts § 435 (1965).[1]

Finding no error in the proceedings below, the judgment is affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.

---

1. "§ 435. Foreseeability of Harm or Manner of Its Occurrence

"(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

\* \* \* \* \*

"Comment:

"(a) The fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another of the particular kind or in the particular manner in which the harm has in fact occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent toward the other and was a substantial factor in bringing about the harm."