195 P.2d 143

**GENE AUTRY PRODUCTIONS, Inc. v. IN-DUSTRIAL COMMISSION et al.**

No. 5083.

Supreme Court of Arizona.

June 24, 1948.

Frank W. Beer and Hess Seaman, both of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix (Robert E. Yount, of Phoenix, of counsel), for respondents.

STANFORD, Chief Justice.

Upon the petition of Gene Autry Productions, a California corporation, this court accepted original jurisdiction and issued an alternative writ of mandamus commanding the Industrial Commission of Arizona, respondents herein, to issue the usual and regular policy of insurance to petitioner in accordance with an application made by it to said Commission, or to appear and show cause why it should not do so. If a peremptory writ of mandamus be denied, then both petitioner and respondent join in asking for a declaratory judgment determining a controversy that exists between the Commission, petitioner, and the moving picture industry as a class, as to whether a policy of insurance containing certain limited conditions of coverage set forth in an order of the Commission may be lawfully and validly issued by it and whether such policy, so issued and so conditioned, would cover the entire liability of petitioner, and the moving picture industry as a class, to its employees working in the regular course of their employment within the State of Arizona.

The Commission, in response to the writ, submitted a voluminous record showing the method and manner in which insurance in the motion picture industry had previously been carried in the State Com-

pensation Fund. The record indicates there had been gross evasion of the law by this industry; the assumption of liabilities for the payment of workmen's compensation by the Industrial Commission for nominal premiums, and at a loss to the State Compensation Fund during the years 1942 to 1947 inclusive in excess of $47,000; that the Commission had written this insurance at an actual rate of $2.76 per $100, whereas the premium rate on the basis of payroll reported and the pure loss rate should have been in excess of $10 per $100 of payroll; that the employing corporations had not complied with the incorporating statutes of the state to subject them to due process in the courts of Arizona. The findings are fully supported by the evidence.

Although the pleadings in the case are attendant with many propositions of law setting forth the contentions of the litigants, one of the questions for us to determine is whether it is mandatory that the Commission issue a policy of insurance without reservations to the petitioner for the purpose of its needs, the losses, irrespective of their amount, to be paid from the State Compensation Fund.

Section 56-904, A.C.A. 1939, reads in part:

" * * * The commission may adopt rules of procedure, rules for the fixing of rates, for the presenting of claims, and such other rules and regulations as are necessary for its business, and change the same from time to time. * * * "

Section 56-920, A.C.A. 1939, is:

"State compensation fund.—There is hereby created a fund, to be known as The State Compensation Fund, for the purpose of insuring employers against liability for compensation, and of assuring to the persons entitled thereto the compensation herein provided. Such fund shall consist of all premiums and penalties received and paid into the fund, or property and securities acquired by and through the use of money belonging to the fund, and of interest earned upon money belonging to the fund. Such fund shall be administered by the commission without liability of the state beyond the payment of losses sustained on account of such fund, and shall be applied to insurance to the payment of compensation and of expenses as herein provided. The commission shall have full authority over the fund, and may do all things necessary or convenient in the administration thereof, or in connection with the compensation business to be carried on by it hereunder, and shall adopt rules and regulations for the collection, maintenance and disbursement of the fund."

Also Section 56-921, A.C.A. 1939, reads:

"Contracts of insurance to employers—Reinsurance.—The commission may, in its name, make contracts of insurance to include and cover the entire underlying liability of employers insured in the state

compensation fund so that such employers may be fully protected, not only for all compensation claims, but for all liability claims whatsoever by employees or their dependents or heirs, including the cost of defense of an action. The commission may also reinsure any risk, or any part thereof, and may enter into agreements of re-insurance as other re-insurance carriers."

Section 56-923, A.C.A. 1939, is:

"Manner of fixing rates.—The state compensation fund and accident benefit fund, hereinafter provided for, shall be neither more nor less than self-supporting. Employments affected by the provisions hereof shall be divided by the commission for the purpose of the state compensation fund into classes whose rates may be re-adjusted at such times as the commission may determine. The commission may re-arrange the classes by withdrawing any employment embraced in one class and transferring it wholly or in part to another class. Separate accounts shall be kept of the amounts collected and expended in each class for determining rates, but for paying compensation and dividends the fund shall be one and indivisible. *The commission shall determine the hazards of the different classes of occupations or industries, and fix the rates of premium therefor at the lowest rate consistent with the maintenance of a solvent state compensation fund, and the creation of a surplus and reserves, and for such purpose may adopt a system of schedule rating in such a manner as to take account of the peculiar hazard of each individual risk.* The commission, in fixing rates, shall provide for the expense of administering the fund, the disbursements on account of injuries and deaths of employees in each class, an adequate catastrophe reserve, reserves adequate to meet anticipated and unexpected losses, reserves adequate to carry the class to maturity, and such other necessary reserves and surplus as may be determined by the commission. The amount of such surplus and reserves shall be determined by the commission, but the catastrophe reserve shall in no event be less than the sum of one hundred thousand dollars ($100,000). However, the commission is authorized in its discretion to endorse on any of its regularly issued policies a self-rating plan, and may apply tentative rates, subject to modification in accordance with the loss experience of such risks, and shall provide for a carrying charge, premium tax and a rate for the creation of a catastrophe reserve and reserves to meet anticipated and unexpected losses to be fixed by the commission." (Emphasis supplied.)

The record contains the entire order of the respondent Commission denying issuance of policy, except on conditional terms, and in that order of denial, among other things, the following appears:

"VI. That the Commission, from its records and files, finds that wranglers and stunt men, who notoriously have bad backs, and whose wage basis was founded upon

the premises set up in Finding No. IV, and, who were paid additional sums therefor, were called upon to take falls from horses, or otherwise, which invited, and resulted, in injuries which entailed compensation losses out of all proportion with the premium assessed, on any rational basis of 'average monthly earning capacity'; in other words that a 'spot risk' was assumed to constitute an 'average'.

"VII. The Commission finds that ordinarily, moving picture companies, make pictures on locations selected in rugged, comparatively inaccessible, and primitive areas of our State, which require transportation over hazardous roads, and work under hazardous conditions, including, in many instances, handling of horses and cattle, frequently by persons inexperienced with the comparatively wild range animals.

"VIII. That, in many instances, persons in the high salary brackets were transported into dangerous mountain areas by airplane, and transported over mountain, and desert roads, * * *

"IX. That the Commission finds that in making one picture alone, thirty-seven injuries were reported, a number of which resulted in claims for permanent partial disability.

"X. That, the Commission finds, as a result of conferences, and investigations, with representatives of a number of companies in California, and at its offices in Phoenix, that it appears that ordinarily moving picture companies in securing signatures of employees to rejection forms prescribed in Section 56-944 and 56-945, A. C. A. 1939, would advise the employees that signing the forms was a mere formality required to insure their compensation under the laws of California; and without advising the employees, hired in California, of their rights under the laws of the State of Arizona."

The Commission denied petitioner the standard policy applied for, but offered to write a policy as it relates to "spot risks" in the industry where no "average monthly wage" basis can be determined on the following conditions:

"A.

"That the maximum salary which shall be considered for

(1) purpose of assessment of premium,

(2) purpose of computing compensation or death benefits shall be $3,000 per month.

(3) The same basis of earnings shall be controlling for both purposes; and upon all parties.

"B.

"That the said policy of insurance cover all persons performing services for said company in the State of Arizona.

"C.

"That regardless of the number of days actually worked in Arizona in the making of the picture, the payroll basis for

"(1) purpose of assessment of premium

"(2) purpose of payment of compensation or death benefits shall be determined upon the 'guaranteed wage', provisions of Section 56-952, A. C. A. 1939—which 'guaranteed wage' factor shall be established on the basis of mutual agreement between the employer and the individual employees, by each side signing and approving the same, subject to the approval of The Industrial Commission of Arizona; that such 'guaranteed wage' shall be equitable, and fairly represent the 'monthly earning capacity' of the employee, while engaged in services for the company in the State of Arizona; and, which, in no event, shall be less than the wage paid employees for similar work in the State of Arizona not under contract."

The Commission undertook to issue a policy containing such conditions on the basis of a premium of $2.76 per $100 for workmen's compensation, and 2¢ per $100 for occupational disease coverage, based upon the aforementioned "guaranteed wage" factor, to a maximum of $700.00 monthly to be carried by the State Compensation Fund; and to reinsure all amounts above that figure up to the maximum of $3,000, which it is able to purchase, at an accelerated rate of premium, at cost to it.

It is contended by the petitioner:

" * * * that it is beyond the power of respondents to exclude any class of work-ers from the total benefits of the law merely because of any method of payment of salaries, or because of the size or extent of the salaries or in the method of payment of salaries, or because of any 'spot' employment for a period of less than thirty days; that it is beyond and in excess of the power and jurisdiction of the respondents to separately classify the moving picture industry and apply to it different rules, different obligations and different benefits than those applied to employers and employees generally within the State of Arizona, for any of the reasons assigned in said order, or for any reason at all; that it is the mandatory duty of the respondent, The Industrial Commission of Arizona, to issue to petitioner the policy of insurance applied for that will cover its entire liability as an employer of employees within the State of Arizona, under Sec. 56-933, ACA 1939; that it is beyond its power and in excess of its jurisdiction, and in any event would be an erroneous exercise of jurisdiction to issue to petitioner any other or different policy of insurance than one that would cover its entire liability to employees, or a policy conditioned as specified in its said order, regardless of any fear of, possibility of, or probability of excessive loss ratio or catastrophe, nor because of any extra hazardous character of employment of petitioner's employees as set forth in said order, whether based upon respondents past experience in insuring moving picture companies or otherwise,

and regardless of any administrative difficulty in assessment or collection of premiums or determination of compensation benefits in the event of claims for compensation under said policy, all of such factors being proper matters for consideration in legislative action, * * *."

Section 56-933, A.C.A.1939, referred to in the foregoing contention of the petitioner, reads:

"Every policy of insurance for compensation, issued by the commission or by another, shall cover the entire liability of the employer to his employees covered by the policy or contract, and shall contain a provision setting forth the right of the industrial commission, or the state, for the benefit of the state compensation fund, to enforce in their own names, either by filing a separate claim or by making the insurance carrier a party to the original claim, the liability of the insurance carrier in whole or in part for the payment of such compensation. * * *"

The main questions revolve around the provisions of Sections 56-921, 56-932, and 56-952, and may be summarized as follows: The employer under the Compensation Law must insure persons in its service in one of three ways: (a) by a private insurance carrier authorized to write such insurance in Arizona; (b) by qualifying as a self-insurer; or (c) by procuring insurance in the State Compensation Fund. (Section 56-932)

It appears to be mutually agreed that the petitioner either cannot, or does not desire to, become a self-insurer; and that it cannot from the hazardous nature of the risk insure its liability with a private carrier authorized to write insurance. It is the contention of petitioner that the state fund must accept the risk on the basis applied for. The Commission on the other hand contends that it cannot write this insurance without reinsuring a portion of the risk; that it is not able to purchase reinsurance to fully insure the risk on petitioner's terms; and that the insurance that it is able to issue and the reinsurance that it is able to purchase is insufficient to give the employer the insurance coverage it requests and still insure the financial solvency of both the state fund and the employer. It further contends that it cannot be compelled to issue a policy which would probably result in the insolvency of the fund.

■ One of the primary duties of the Commission is to insure the solvency of the state fund. Employers' Liability Assurance Corp. v. Frost, 48 Ariz. 402, 62 P.2d 320, 107 A.L.R. 1413; Ind.Comm. v. Arizona Power Co., 37 Ariz. 425, 295 P. 305; Ind.Comm. v. Arizona Power Co., 38 Ariz. 44, 297 P. 452; Sims v. Moeur, 41 Ariz. 486, 19 P.2d 679; Ind.Comm. v. School Dist. No. 48, 56 Ariz. 476, 108 P. 2d 1004; Ison v. Western Veg. Distributors, 48 Ariz. 104, 59 P.2d 649; Doby v. Miami Trust Co., 39 Ariz. 228, 5 P.2d 187;

Blasdell v. Ind.Comm., 65 Ariz. 373, 181 P.2d 620.

 This court in Employers' Liability Assurance Corp. v. Frost, supra, held that the provisions of Section 56-932, A.C.A.1939, requiring that an insurance carrier who had qualified to write insurance in Arizona accept all risks offered to it was unconstitutional. We now hold that where the Industrial Commission of Arizona, in managing the State Compensation Fund, determines from competent evidence that to issue a policy to an employer in the State Compensation Fund in employments which involve hazards and risks of such a nature that it would, in all reasonable probability, result in the State Compensation Fund's becoming insolvent, the Commission is within its jurisdiction in refusing to issue a policy of insurance under such circumstances. If the Commission can, under the provisions of Section 56-921, reinsure the risk in whole or in part, and thereby insure the solvency of the fund, it would be its duty to do so before rejecting the application and refusing to write the policy of insurance. The Commission may not arbitrarily refuse to issue a policy of insurance in the State Compensation Fund for the reason that it is not the purpose or intent of the Workmen's Compensation Law to prevent legitimate industries from transacting business in the State of Arizona; however, where it is shown by competent evidence that the nature and character of the industry, or policies and practices of the employer and its methods of operation, or the period of operation in Arizona is such that its business is not "usual" or "average" to such an extent that it is not possible to establish an "average monthly wage"; then the Commission is justified in refusing to write such policy and its refusal would not be in conflict with either the Fourteenth Amendment of the Constitution of the United States, or Article XVIII, Section 8, of the Constitution of Arizona, or Articles 9 and 12, Chapter 56, A.C.A.1939, as supplemented and amended.

Insurance is based upon the law of averages. This court has held that effect must be given to the word "average" as it appears in Section 56-952. In Kennecott Copper Corp. v. Industrial Commission et al., 61 Ariz. 382, 149 P.2d 839, 840, we held:

"* * * As we have said an average wage cannot be based on the wage the employee received for just one month. We, therefore, construe the statute to mean that if the employee, at the time of his injury or death, has been employed for thirty or more days, his normal and over-time wage for the previous thirty days shall be the basic wage for computing compensation to him or to his dependents in case of his death. If he has not been continuously employed for thirty days immediately preceding injury or death, the compensation shall be based, section 56-952 says, on his 'average monthly wage' to be as-

certained by the formula given in such section. The 'average monthly wage' where the employee has been employed thirty or more days preceding the injury, or for less period of time, is the basic figure to be used in computing compensation. De Galaviz v. Industrial Comm., 61 Ariz. 377, 149 P.2d 837."

It is elementary that where the operations of an industry are intermittent, irregular, and for periods of time of *less than thirty days* an "average monthly wage" cannot be calculated under the statutory formula prescribed by Section 56-952 unless it can be ascertained and determined under the last sentence thereof, reading as follows:

"* * * If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in the said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract."

.. The method of establishing a guaranteed wage must be established on a basis of individual contract and not be controlled by collective bargaining contract.

This court has given careful consideration to the issue raised by the petitioner, and recognized as a possibility by the respondent Commission, that by adopting the rules it has outlined for this special contract of insurance it may have entered a field that has been preempted by legislative enactment.

We have no intention of approving the exercise by the Commission of rule-making power in a field that has been occupied by legislative enactment. The Commission, in its brief, expressly disavows any such purpose and in its order, offering to write the policy of insurance indicated, expressly provided that the matter be first submitted to this court for determination of its jurisdiction to issue such a policy. Were the statute, Section 56-952, clear and explicit, so that there could be no doubt as to the meaning and construction thereof, we might have some hesitancy in upholding the Commission in the premises. To establish that the section is not free from doubt and is clearly ambiguous, we have but to refer to the fact that the court had been repeatedly called upon to interpret the meaning of the section. The late Judge Ross, writing for a unanimous court, in De Galaviz v. Ind. Comm., 61 Ariz. 377, 149 P.2d 837, said:

"The commission made its award on the theory that the workman when killed had been an employee only since June 27, the date he resumed his work after his vacation. Section 56-952, Arizona Code An-

notated 1939, *or that portion we deem important, is so worded that no one, not even a King Solomon, can know from its language what is meant, unless he is advised or informed as to what was evidently intended. * * *"* (Emphasis supplied.)

We, therefore, think it is clear that the intent of the legislature was not to establish a rigid measure, but to lay down flexible rules under which the Commission could establish from the evidence and the facts as they relate to the diversified and seasonal employments of the state a measure by which to evaluate thte reasonable, fair, and equitable earning capacity of workmen, both for purposes of assessment of premium and for the payment of compensation benefits, provided that the same measure of value was to be applied as it related to the collection of premium and to payment of compensation benefits. Brisendine v. Skousen Bros., 48 Ariz. 416, 62 P.2d 326, 112 A.L.R. 1089. In other words, we believe the intent of Section 56-952 is to enable the Commission, in its management of the Compensation Fund, to apply the law of averages and sound insurance principles, in order that under sound actuarial practice the rate of premium when applied to the basic wage will produce the reserves necessary to enable the Commission to pay the accident, compensation, and death benefits provided in the statute.

The records submitted by the Commission fully support its findings of fact that it cannot with safety to the State Compensation Fund or to the employer issue the usual policy of insurance in the State Compensation Fund, and that an effort to do so would result in the probable loss of its reinsurance, and that it cannot buy other reinsurance. There is no conflict in this evidence. We hold, therefore, that the Commission was justified in refusing to issue a policy of insurance upon the terms requested by the petitioner, and it is ordered that the alternative writ of mandamus be quashed.

LaPRADE and UDALL, JJ., concurring.