474 P.2d 462

STATE COMPENSATION FUND and Salt River Project Agricultural Improvement and Power District, Petitioners,

v.

Dennis E. CRAMER, Respondent Employee,

The Industrial Commission of Arizona, Respondent.

Dennis E. CRAMER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Salt River Project Agricultural Improvement and Power District, Respondent Employer,

State Compensation Fund, Respondent Carrier.

Nos. 1 CA–IC 356, 1 CA–IC 357.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 24, 1970.

Rehearing Denied Oct. 21, 1970.
Review Denied Jan. 12, 1971.

1. A.R.S. § 28–755 and § 28–756 do not require her to do more than flash her brake lights.

John S. Schaper, Phoenix, for Dennis E. Cramer.

Donald L. Cross, Chief Counsel, Phoenix, for Industrial Commission.

Robert K. Park, Chief Counsel, by Ronald M. Meitz, Phoenix, for State Compensation Fund.

HAIRE, Judge.

This case is before the Court by writ of certiorari to review an award of total permanent disability benefits to the respondent-employee.[1]

The respondent-employee is a former electric lineman who lost portions of his left arm and right leg by amputation due to an industrial accident. In spite of the seriousness of his injuries, he has been able to return to work for the petitioning employer as an estimator earning $650.00 per month. His pre-injury average monthly wage as a lineman was fixed by the Commission at the statutory maximum of $1,000.00 per month.

Under the provisions of A.R.S. § 23-1045, subsec. C, in the absence of proof to the contrary, the respondent-employee's loss by separation of one hand and one foot is deemed to constitute permanent and total disability.[2] The primary contention raised on appeal by the State Compensation Fund is that the disability was not permanent and total because there was presented to the Commission "proof to the contrary" consisting of evidence establishing that the injured employee had a post-injury earning capacity, but that because of the Commission's misinterpretation of the word "disability" as used in said statute, the Commission completely ignored this "proof to the contrary". In view of this contention it becomes necessary to review the record in order to determine whether or not the Commission has in fact misinterpreted the statute involved.

The claims file reveals that on May 23, 1969 the Commission's hearing officer filed his report, after formal hearing, finding in essence that the evidence showed that the injured employee was not permanently totally disabled, but that rather, he had a post-injury earning capacity, having by reason of his injuries sustained a 41.10% reduction in earning capacity. The hearing officer therefore recommended an appropriate award of permanent *partial* disability pursuant to A.R.S. § 23-1044, subsec. C. On June 20, 1969, while the matter was pending before the Commission, Commissioner John Ahearn wrote a memorandum to the other commissioners concerning the matter, stating:

"Once accepting the premise that the disabilities under 23-1045 are scheduled disabilities and that they should be treated as awards made because of the nature of the *physical* disability and not work-

---

1. This case was decided under the statutory law as it existed prior to January 1, 1969.

2. The exact language used in A.R.S. § 23-1045, subsec. C is as follows:

"C. In the absence of proof to the contrary, disability shall be deemed total and permanent if caused by:

\*　　\*　　\*　　\*　　\*

"6. The loss by separation of one hand and one foot."

ing disability it is clear that the consideration of post-injury earnings or a determination of loss of earning capacity in order to determine the compensation payable to the injured claimant is not necessary." (Emphasis in original).

Thereafter on July 3, 1969, the Commission considered the hearing officer's above-mentioned report of May 23, 1969, and disapproved the same, stating in a memo signed by four of the five commissioners:

"* * * The Commission has adopted the policy of adjudication of cases involving injuries specifically meeting the criteria of 23–1045 C as ones entitled to total and permanent benefits for the life of the injured person *regardless of post-injury earnings.* Therefore award should be entered for permanent total under 23–1045 B * * *." (Emphasis supplied).

From the foregoing it is clear that the Commission construed the word "disability" in § 23–1045, subsec. C as referring only to *physical* disability and not working or earning capacity disability, and thus considered immaterial the evidence relating to the respondent-employee's post-injury earning capacity.[3]

■ In our opinion the disability referred to in A.R.S. § 23–1045 is a working or earning capacity disability. While there is a presumption that an employee sustaining any of the injuries enumerated in subsection C has suffered a total disability (100% loss of earning capacity), such presumption is rebuttable by "proof to the contrary", i. e., by appropriate evidence that the injured employee in fact has a post-injury earning capacity. The Arizona appellate courts have had several occasions to consider the meaning of the word "disability" as used in § 23–1045 and its statutory predecessors, and have uniformly rejected the concept of total *physical* disability as the ultimate fact for de-

termination. Savich v. Industrial Commission, 39 Ariz. 266, 5 P.2d 779 (1931); Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 (1935); Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950); Phelps Dodge Corp., Morenci Br. v. Industrial Com'n., 90 Ariz. 379, 368 P.2d 450 (1962); Cudahy Packing Company v. Industrial Commission, 7 Ariz.App. 335, 439 P.2d 307 (1968). In all of these cases questions raised on appeal made it necessary for the court to determine the meaning of the word "disability" as used in this statute, and in each instance the court held that while evidence of *physical* disability was evidentiary, the ultimate fact for determination was the employee's working or earning capacity disability. Illustrative of the holdings of these cases is the court's holding in Savich v. Industrial Commission, *supra*:

"Petitioner suggests that he is incapacitated from ever following his occupation of miner, and that therefore his disability should be classed as total and permanent. The word 'disability,' as used in our Compensation Act, does not mean disablement to perform the particular work petitioner was doing at the time of his injury, but refers to injuries which result in *impairment of earning power generally.* * * * *It applies to earning power* and not to inability to do a certain class of work. (39 Ariz. at 270, 5 P.2d at 780). (Emphasis added).

In Eagle Indemnity Co. v. Hadley, *supra,* the concept was stated by the court in this manner:

"In interpreting this section [23–1045] we have held that the commission in determining extent of disability is concerned solely with loss of earning power. The percentage of general functional physical disability resulting from the accident as fixed by doctors or Medical Advisory Boards is only one of the fac-

---

3. The contention that the word "disability" in A.R.S. § 23–1045 refers to *physical* as opposed to *working* or *earning capacity* disability is also urged by the Com-

mission in another matter presently being considered by this Court, Dennis v. Industrial Commission, 1 CA–IC 366.

tors to be considered in arriving at the percentage of loss of earning power and not the controlling factor." (70 Ariz. at 186, 218 P.2d at 493).

Although none of the above-cited cases involves the injuries specifically enumerated in subsection C of 23–1045, we see no reason why a different meaning should attach to the word "disability" as used therein. The working or earning capacity disability approach, as opposed to the physical disability concept, has been adopted in numerous Arizona decisions involving permanent *partial* disability under A.R.S. § 23–1044, subsec. C, Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967) ; White v. Industrial Commission of Arizona, 87 Ariz. 154, 348 P.2d 922 (1960) ; Laird v. Industrial Commission, 8 Ariz. App. 196, 445 P.2d 79 (1968) ; Standard Accident Insurance Company v. Industrial Commission, 66 Ariz. 247, 186 P.2d 951 (1947). This earning capacity approach is characterized by Larson as the distinctive feature of workmen's compensation systems. *See* 2 A. Larson, The Law of Workmen's Compensation § 57.10 (1970).

■ In discussing A.R.S. § 23–1044, subsec. B, the so-called "scheduled injury" statute, the Arizona Supreme Court has stated that:

"It [the legislature] assumed that every loss enumerated would cause some permanent loss of earning power, and arbitrarily fixed the compensation therefor." (Ujevich v. Inspiration Consol. Copper Co., 42 Ariz. 276, 280, 25 P.2d 273, 275 (1933).

Applying the same reasoning to the semi-scheduled injuries listed in A.R.S. § 23–1945, subsec. C, and particularly to the facts of this case, we think the most that can be said is that the legislature assumed that in the absence of proof to the con-

trary the respondent-employee's disability would cause a total loss of earning power. However, the statutory language "in the absence of proof to the contrary" is clear and unequivocal, and qualifies what otherwise would constitute a conclusive presumption of total disability. This qualifying language raises a rebuttable presumption that the enumerated injuries have caused a permanant total loss of earning capacity. However, when evidence of post-injury earning capacity is presented, it becomes the duty of the Commission to review and consider that evidence, and to determine whether or not that evidence establishes an actual post-injury earning capacity, and if so, how much.

■ As previously indicated, the Commission failed to make this determination. Therefore, the award must be set aside. We wish to make it clear that by setting aside the award this Court is not indicating that the evidence presented *compelled* a finding of post-injury earning capacity. Rather, we merely hold that the evidence was sufficient [4] to raise a fact question as to the post-injury earning capacity of the injured workman for determination by the fact finding forum, the Commission. With such evidence before it, the Commission could not make an award of permanent total disability under § 23–1045, subsec. C without making such determination.

A separate question is presented to the Court by the respondent-employee's contention that the Commission erred in entering an award for temporary partial disability rather than for permanent total disability for the period from August 12, 1968 through March 18, 1969. To the extent that this determination of temporary partial disability involved a finding by the Commission of an interim post-injury earning capacity it would appear to be somewhat inconsistent with the Commission's

4. Evidence of post-injury earnings raise a presumption of post-injury earning capacity, Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967) ; Laird v. Industrial Commission, 8 Ariz. App. 196, 445 P.2d 79 (1968) ; Gutierrez v. Industrial Commission, 8 Ariz.App. 477,

447 P.2d 569 (1968) ; but, such evidence is not necessarily conclusive or controlling, Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959) ; Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962).

later determination of permanent total disability (no post-injury earning capacity). However, we believe that this inconsistency is traceable to the Commission's view (previously discussed herein) that a factual determination as to earning capacity was not necessary when entering in its final award under A.R.S. § 23–1045, subsec. C when the condition became stationary.

In our opinion, the presumption created by § 23–1045, subsec. C is applicable from the time of the injury. During the period before these injuries become stationary, the Commission may make such temporary total disability and temporary partial disability awards as are consistent with the evidence before it, bearing in mind that in the absence of proof to the contrary, the disability is deemed total, even in this pre-stationary period. Upon reconsidering this matter, if the Commission, after reviewing and weighing the evidence, finds that the injured employee sustained a total loss of earning capacity which was continuous from the time of the injury until the condition became stationary, then the award for temporary total disability should continue until the entry of the permanent award. If, however, the Commission finds that the petitioner did have a post-injury earning capacity prior to the time his condition became stationary then the award for temporary partial disability was appropriate.

Although the question was discussed in the briefs and in oral argument, the issues in this case do not require that this Court determine whether or not a final award of permanent total disability under A.R.S. § 23–1045 is subject to continuing Commission jurisdiction so that it might be "reopened" at some future date upon proper application and hearing. We do not read the statutes as necessarily precluding such reopening. However, as stated above, we are not required to, and do not decide that question at this time.

The award is set aside.

EUBANK, P. J., and JACOBSON, J., concur.