527 P.2d 1096

David F. ALTAMIRANO, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Magma Copper Company, Superior Division,
Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. I CA–IC 1097.

Court of Appeals of Arizona,
Division 1,
Department C.

Nov. 7, 1974.

Rehearing Denied Dec. 4, 1974.
Review Denied Jan. 14, 1975.

Spencer K. Johnston, Phoenix, for peti-
tioner.

Edward F. Cummerford, Chief Counsel,
The Industrial Commission of Arizona,
Phoenix, for respondent.

Twitty, Sievwright & Mills by John F.
Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State
Compensation Fund, Phoenix, for respon-
dent carrier.

OPINION

NELSON, Judge.

The petitioner, David Altamirano, insti-
tuted this action by Writ of Certiorari
challenging an award of the Industrial
Commission of Arizona which granted his
1972 Petition to Reopen for New, Addi-
tional, or Previously Undiscovered Disabil-
ity [A.R.S. § 23–1061 (H)], after which a
hearing was held to determine the amount
of benefits payable to Altamirano for tem-
porary partial disability suffered between
May 18, 1972, and January 31, 1973. (The
original accident upon which the Petition to
Reopen was based occurred in 1966.) In
computing the amount of benefits to which
Altamirano was entitled for the period of
temporary partial disability, the Industrial
Commission did not allow for the effects
of inflation and changes in industry-wide
wage levels between 1966 and 1972. The
result of this method of computation was
to deny petitioner any recovery because the
dollar amount of his wages in 1972, even

though he was partially disabled, was a higher amount because of inflation than he had been earning at the time of his injury in 1966, and thus the Industrial Commission concluded Altamirano had suffered no diminished earning capacity. Altamirano presented testimony establishing that the wages in the job he was able to hold while temporarily partially disabled were now much higher than they had been for a job of that classification at the time he was first injured in 1966:

| | Prior-to-Injury Job | Post-Injury Job |
|---|---|---|
| 1966 | $3.29 hr. | $2.50–$2.87 hr. (would have paid) |
| 1972 | $4.69 hr. | $4.00–$4.25 hr. (he in fact earned) |

The sole issue before this court is whether petitioner's recovery was properly computed, or whether recovery should have been based on real wages, with the effects of inflation and changes in industry-wide wage levels removed from the computation.

Section 23–1044(A), A.R.S., sets forth the formula by which the amount of recovery for a temporary partial disability is computed. Section 23–1044(C), A.R.S., sets forth a somewhat comparable formula for the computation of recovery for a permanent partial disability. Subsection C has received a judicial construction which petitioner herein urges this court now to give Subsection A. We agree that a similar construction for the two sections should obtain, and therefore set aside the award.

■ The purpose of industrial compensation is to compensate an employee for lost earning capacity. Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967), Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230 (1951). For example, if an employee's earning capacity is reduced by 50 per cent, and the amount of his post-injury wage is fixed as of the time immediately following injury, before wage levels generally have risen, his recovery will be based on the full 50 per cent loss of capacity. But if the post-injury wage is given several years to rise, and that higher wage is used as his post-injury wage, then his amount of recovery will be reduced, despite the fact that his percentage earning capacity was nonetheless reduced by 50 per cent.[1]

■ All the reasons stated in Whyte v. Industrial Commission, supra, and Arizona Public Service Co. v. Industrial Commis-

1. Illustration of different results obtained by the method of compensation sought by petitioner, and that employed by the Industrial Commission.

Hypothetical Facts: 1969—Employee's average monthly wage ............$100

Employee Injured
Employee can now work at a job paying (i. e., earning capacity reduced 50%) ..............$ 50

1974—Employee's old job would now be paying (due to inflation and wage increases) ................$200
Employee's new, lesser job now pays ..........$100

Formula: 66⅔% of the difference between the wages paid before the injury and the wages which the injured person is able to earn thereafter. § 23–1044(A), A.R.S.

| Method of Computation Sought by Petitioner | | Method of Computation Used by Ind. Commission |
|---|---|---|
| $100 | .............Wages paid before injury.............. | $100 |
| − 50 | .............Adjusted wages thereafter............. | −100 |
| $ 50 | .............The difference....................... | −0− |
| 66⅔% | | 66⅔% |
| $32.50 | .............Amount of compensation.............. for 50% loss of earning capacity | −0− |

sion, 16 Ariz.App. 274, 492 P.2d 1212 (1972) to support removal of inflationary factors from computation of recoveries for permanent partial disabilities apply equally to temporary partial cases.

The Arizona Supreme Court stated in Whyte v. Industrial Commission, supra:

"The intent of the legislature in using the language under consideration was to furnish the commission with a yardstick by which it could with reasonable accuracy determine the diminished earning capacity of an injured employee and by the use of which no inequalities, inequities or injustices could arise. To do this it, of course, intended that the length of the yardstick to be used should at all times remain constant. It follows then that the legislature did not intend that wages received two, five or ten years after an employee has sustained an injury (depending upon when the injury becomes stationary), regardless of changes in business conditions during those periods where all wages have doubled, due to a business boom, or cut in two due to business depression, should be used by the commission as a part of its formula in ascertaining the loss of his earning capacity." 71 Ariz. at 344, 227 P.2d at 233.

This language was quoted with approval in Arizona Public Service v. Industrial Commission, supra.

The court, in *Whyte*, supra, went on to say:

" . . . The diminished earning capacity of petitioner occurred the moment he sustained his injury. It is only the extent of the loss of his earning capacity which remained undeterminable and this continues until the healing processes of nature renders the condition of his injuries stationary so that the character of work he is able to do, if any, may be ascertained. As above stated the law clearly fixes his earning capacity immediately prior to his injury as one of the predicates for determining the loss in his earning capacity. We think it reason-

able and logical to conclude therefore that in defining the other predicate as 'the monthly wages he is able to earn thereafter' the word 'thereafter' was intended to mean and must of necessity be construed to mean, 'immediately thereafter' and that the second predicate based upon his new employment must be determined by ascertaining what wages others in the same or most similar class in the same or most similar employment in the same or similar locality were receiving at the time the injury occurred. This is the only construction that will yield an unvariable result regardless of surrounding circumstances, and harmonizes with all of the authorities that changes in economical conditions may not be permitted to affect the amount of compensation due an injured employee based upon loss of earning capacity. Capone's Case, 239 Mass. 331, 132 N.E. 32; Durney's Case, 222 Mass. 461, 111 N.E. 166; Peak v. Nashua Gummed & Coated Paper Co., 87 N.H. 350, 179 A.355. The authorities seem to agree that the employee in common with all others must bear the loss resulting from a business depression. It follows as a necessary corollary thereto that the employee in common with all others is entitled to the enjoyment of benefits resulting from general wage increases due to eras of great prosperity in the nation. Therefore a reduction or increase in earning capacity occasioned by general business conditions and not due to the injury cannot be considered by the commission as a basis for fixing or adjusting the compensation of an injured employee." 71 Ariz. at 345, 227 P.2d at 234.

The language in *Whyte*, supra, upon which the hearing officer relied, and upon which respondents base their argument that inflationary factors cannot be removed from temporary partial recoveries, is the following:

" . . . This formula, however, applies only in cases where the increase or decrease in wages is due solely to a

change in economic conditions that occurs between the date the injury takes place *and the date the injury becomes stationary,* as in this case. It has no application where the difference in wages during that period is due to a change in the physical condition of the injured employee directly and proximately resulting from said injury or due to the peculiar or special efficiency of such employee." 71 Ariz. at 346, 227 P.2d at 234. (emphasis supplied)

█ This language speaks of "the date the injury becomes stationary," and, as respondents point out in their brief: "An injured workman who is drawing temporary partial disability compensation is not medically stationary." However, this language was not intended to limit the principles set forth in the case in the way the Industrial Commission interprets it. The sole proposition for which the paragraph stood was that where changes in wage levels between the time of injury and the time when the extent of disability is capable of determination result from changes in the claimant's physical condition, as opposed to changes in the economy, the effects of those wage changes should not be removed from computation of the claimant's recovery. The language "the date the injury becomes stationary" is the phrase descriptive of the time when the factors necessary to complete calculation of the amount of recovery become known. That phrase does not describe the date upon which after-injury wages become fixed, nor was it intended to limit the holding of the case to awards for permanent partial disability. Respondents equate the meaning intended in *Whyte,* supra, in using the term "stationary" with the term "permanent." This is not, however, the meaning intended by the court. Rather, the term "stationary," as it was used, applies equally to a temporary partial disability at the point when the amount of partial disability becomes known; the fact that the disability will eventually terminate does not affect the fact that the worker has reached a station-

ary point in the sense of being capable of doing a particular amount of light work. We recognize that the term "stationary" does have a particular meaning in the law of workmen's compensation; however, in *Whyte,* supra, we do not believe that the term was being used in its technical sense. To hold otherwise would thwart the purpose of industrial compensation to compensate for reduced earning capacity. In addition, the statutory language construed in *Whyte,* supra, and the language of Subsection A of A.R.S. § 23–1044 is essentially identical. When *Whyte,* supra, was decided in 1951, the language of the permanent partial statute, insofar as it is pertinent here, was "the monthly wages he is able to earn thereafter." A.C.A., 1939, § 56–957(c). (This statute was later amended to read, ". . . the amount which represents his reduced monthly earning capacity resulting from the disability. . . ." A.R.S. § 23–1044(C), as amended Laws 1968) Subsection A is similarly in terms of "the wages which the injured person is able to earn thereafter."

█ It is presumed that the legislature is aware of court decisions interpreting the language in a statute, and by retaining the statutory language upon which such decisions are based, approves of that interpretation. Coover v. Industrial Commission, 14 Ariz.App. 409, 484 P.2d 21 (1971); State v. Jones, 94 Ariz. 334, 385 P.2d 213 (1963). Since the language used in Subsection A is the same as that interpreted by our Supreme Court in 1951 in *Whyte,* supra, similar constructions should now obtain.

In Arizona Public Service Co. v. Industrial Commission, supra, this Court discussed *Whyte,* and the effect of the subsequent statutory amendment to the permanent partial disability statute upon *Whyte's* holding that general wage increases and other variable factors must be removed from the computation of recoveries for injuries resulting in reduced earning capacity. The court was again dealing with a "permanent partial" situation, and it con-

 

cluded that the earning capacity test was the one intended in the permanent partial statute as it appeared at the time of the *Whyte,* supra, decision, and was still the test intended under the amended language:

"The Whyte rule is an application of the principle that it is only by the elimination of all variables except the injury itself that a reasonably accurate estimate can be made of the impairment of earning capacity attributable to the injury." 16 Ariz.App. at 227, 492 P.2d at 1215.

The reasoning of the court is equally applicable to awards for temporary partial disabilities.

Award set aside.

WREN, P. J., and FROEB, J., concur.