741 P.2d 699

**Warren McPEAK, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION, of Arizona, Respondent,**

**M.M. Sundt Construction Co., Respondent Employer,**

**Employers Insurance of Wausau, Respondent Carrier.**

**No. 1 CA–IC 3540.**

Court of Appeals of Arizona, Division 1, Department A.

June 16, 1987.

Review Denied Sept. 22, 1987.

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Lewis and Roca by Merton E. Marks, Susan M. Freeman, R. Todd Lundmark, Phoenix, for respondents Employer and Carrier.

## OPINION

FIDEL, Judge.

We review an Industrial Commission award setting the average monthly wage of the petitioner employee, Warren McPeak (claimant), at the statutory maximum of $1,325.00. The claimant asserts that A.R.S. § 23–1041, which dictates the maximum average monthly wage, violates Art. 18, § 8 of the Arizona Constitution unless interpreted to cap "real," not "nominal" wages, a distinction we define below. We disagree and affirm the award.

On October 18, 1984, the claimant fractured an ankle while working as an ironworker for the respondent employer, M.M. Sundt Construction Company. His earnings exceeded $2,500 per month at the time. The respondent insurance carrier, Employer's Insurance of Wausau, accepted his claim for benefits. The Industrial Commission established his average monthly wage at $1,325.00 per month. By timely request for hearing the employee protested that this monthly wage setting, although the statutory maximum, was unconstitutionally low. At the conclusion of hearing the administrative law judge set claimant's average monthly wage at $1,325. The administrative law judge declined to rule upon claimant's constitutional challenge, believing he lacked jurisdiction to do so. After the award was affirmed upon administrative review, claimant brought a timely special action to this court.

In 1925 Arizona enacted a workers' compensation system. Laws 1925, ch. 83. Partial disability, total disability, and death benefits were established as percentages of average monthly wage. In the original workers' compensation act the average monthly wage was left uncapped, and it remained so for 23 years.

Art. 18, § 8 of the Arizona Constitution provides:

The percentages and amounts of compensation provided in House Bill No. 227 [Laws 1925, Ch. 83] enacted by the Seventh Legislature of the State of Arizona, shall never be reduced nor any industry included within the provision of said House Bill No. 227 eliminated except by initiated or referred measure as provided by this Constitution.

In 1948, in accordance with Art. 18, § 8, the Arizona voters passed an initiative establishing a ceiling of $1,000 on the workers' compensation average monthly wage. Laws 1949, Initiative and Referendum Measure, p. 325. The legislature raised this ceiling to $1,250 in 1977, Laws 1977, ch. 151, § 9, and to $1,325 in 1980, at which level it now stands. Laws 1980, ch. 246, § 30. A.R.S. § 23–1041(E) now reads,

Notwithstanding any other provision of this chapter, in computing the average monthly wage there shall be excluded from such computation all wages or other compensation for services in excess of one thousand three hundred twenty-five dollars per month.

Claimant introduced evidence that inflation has substantially reduced the purchasing power of the dollar since 1948 to the degree that the current statutory maximum of $1,325 per month will buy far less than the $1,000 monthly figure approved by the voters of that bygone era. His expert economist, Dr. John Buehler, defining "real wages" as the purchasing power of money and "nominal wages" as actual dollars received, testified that a 1985 nominal wage of $1,325 was equivalent in purchasing power to only $296 in 1948 dollars. The result, claimant argues, has been to reduce amounts of compensation without approval by the people through initiative or referendum in violation of Article 18, § 8, unless the statutory ceiling of § 23–1041(E) is construed in "real," not "nominal" dollars.

■ This inventive argument requires us to determine both legislative and constitutional intent. We first consider the statute: When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, courts must accept that meaning and enforce it. *Ross v. Industrial Comm.*, 112 Ariz. 253, 256, 540 P.2d 1234, 1237 (1975). Judges should not alter the meaning of simple English words to bend statutes to their sociological or economic views. *Kilpatrick v. Superior Court*, 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970), cited in *Padilla v. Industrial Comm.*, 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976). A.R.S. § 23–1041(E) is clear. A dollar is commonly defined as a basic monetary unit, the equivalent of 100 cents. *Webster's Ninth New Collegiate Dictionary* 373, 765 (1985). We will not twist the meaning of the word.

■ This is not the first time this court has been asked to construe A.R.S. § 23–1041(E) to allow an average monthly wage beyond the statutory maximum. In *Schmitz v. Industrial Comm.*, 26 Ariz. App. 404, 406, 549 P.2d 184, 186 (1976), we stated:

The statutes in question are clear and unambiguous, and reflect an obvious intent to limit recovery of compensation. Although the $1000 ceiling on the average monthly wage may have better reflected earning capacities and wages when the statute was originally adoped in 1948, it is not the function of this Court to usurp the powers and duties of the legislative branch. Therefore, we will not manipulate the statutory scheme in order to alleviate alleged inequities where the statutory meaning is clear.

The claimant urges that we abandon the majority's holding in *Schmitz* and adopt the dissenting view that *Whyte v. Industrial Comm.*, 71 Ariz. 338, 227 P.2d 230 (1951), and *Altamirano v. Industrial Comm.*, 22 Ariz.App. 379, 527 P.2d 1096 (1974), govern. *Schmitz*, 26 Ariz.App. at 407, 549 P.2d at 187. This we decline to do. Rather we reiterate the majority holding in *Schmitz* that *Whyte* and *Altamirano* do not apply.

*Whyte* concerned comparison of pre-injury and post-injury earnings for the purpose of computing permanent partial disability benefits. *Altamirano* concerned compari-

son of pre-injury and post-injury earnings for the purpose of computing temporary partial disability benefits. To comply with the requirements of *Whyte* and *Altamirano*, such comparisons must be accomplished in this fashion: From the lesser of claimant's monthly earnings at the time of injury or the statutory maximum of § 23–1041(E), the Industrial Commission subtracts the claimant's post-injury monthly earning capacity corrected to remove any increment attributable to post-injury inflation. The difference, if any, is the claimant's cognizable lost earning capacity. Failure to make such adjustment *for post-injury inflation, according to *Whyte* and *Altamirano*, would permit inflation to mask a significant loss of earning capacity *within the compensable range permitted by § 23–1041(E)* as slight or none at all.

Yet § 23–1041(E) sets the compensable range, and earnings which fall outside it, no. matter how substantial, are excluded from the determination of lost earning capacity. That is the very purpose of § 23–1041(E), which clearly caps the compensable range in dollars. Though *Whyte* and *Altamirano* require inflationary adjustments *within* the compensable range, they do not require inflationary adjustment of its express statutory ceiling.

Such was our *Schmitz* holding in 1976, and we presume that the legislature knew of it in 1977 and 1980, when it twice raised the ceiling of § 23–1041(E). Each time the legislature left the ceiling as a fixed number of dollars. On neither occasion did it build into the statute an automatic inflationary adjustment mechanism, as a majority of states have done. 2 A. Larson, *Workmen's Compensation* § 60.43 (1987). These actions bespeak legislative contentment with our holding in *Schmitz* and demonstrate that the legislature means to accommodate inflation by such occasional adjustments in the ceiling of § 23–1041(E) as it deems appropriate.

■ Having decided that the dollars of § 23–1041(E) are what claimant calls "nominal" dollars, i.e., dollars amounting to 100 cents in currency of the day, and not "real," i.e., 1948 dollars, we turn to the

question whether the statute, so interpreted, complies with Art. 18, § 8. Differently stated the constitutional question is this: Does Art. 18, § 8, which clearly precludes the legislature from reducing the dollar ceiling of § 23–1041(E) without a vote of the people, likewise preclude the legislature, absent popular referendum, from maintaining that dollar ceiling constant while inflation saps its buying power?

We answer this question, no. We do not believe the drafters of Art. 18, § 8 or the voters who approved it intended that in periods of inflation the legislature must seek repetitive voter approval by referendum in order to leave § 23–1041(E) *unchanged.* The voters of 1948, having recently emerged from the Second World War, were familiar with inflation. Had they wished to require the legislature to regularly accommodate inflationary impact on the dollar, we believe they would have done so directly. Instead they made the statutory dollar ceiling of § 23–1041(E) a constitutional dollar floor and left adjustment upwards to the legislature's discretion and to the ability of future voters to influence that discretion.

In conclusion, although we find § 23–1041(E) both clear in meaning and constitutional in effect, we offer no opinion of its wisdom. An upholding is not an endorsement.

Professor Larson, surveying the states, wrote:

> With the advent of chronic inflation, the hardship wrought by the fixed maximum limits became intolerable, what with the legislatures, some meeting only every two years, finding it impossible to legislate appropriate increases promptly enough to keep pace with the cost of living. Accordingly, following the pioneering lead of Connecticut, most states adopted a sliding-scale maximum tied to the state's average weekly wage. By July, 1986, the device in some form was in use in all states except Arizona, Arkansas, California, Georgia, Indiana, Nebraska, and New York.

2 A. Larson, *Workmens Compensation* § 60.43 (1987). Those who regard the im-

pact of our fixed maximum limit as "intolerable," in Larson's word, or, in the word of the *Schmitz* dissent, "absurd," should direct their remedial efforts toward the legislature, not the courts.

The award of the Industrial Commission is affirmed.

GRANT and CONTRERAS, JJ., concur.